# BIG GOOSE AND BEAVER DITCH COMPANY v. MORROW.

Ditches—Liability of Owner upon Failure to Properly Guard Dangerous Washout—Proximate Cause—Judgment —Costs Left Blank.

1. It is the duty of a ditch owner to provide reasonably adequate safeguards or barriers to prevent the stock of the owner of the land crossed by the ditch from falling into a dangerous washout caused by the action of the water carried in the ditch; and for a failure to properly guard the same the ditch owner is liable in damages to the land owner for injury to his live stock caused by their falling into the washout; notwithstanding that the right of way for the ditch was acquired while the land was public.

2. It is the duty of a ditch owner, having a right of way over the lands of another for his ditch, to so protect the same that it will not interfere with the land owner and his enjoyment of his premises, to any greater extent than that reasonably justified by the easement. The maxim "Sic utero tuo ut alienum non laedas" applies in such a case.

3. It is not material that the washing is no greater than in other cases of water similarly conducted, nor that it may have been impractical to build a flume, or that another and longer course around the hills so as to have avoided the place of the washout would have been too expensive and inconvenient.

4. A ditch owner has the right to adopt and employ as a part of his ditch system a natural draw or gulch; but if a dangerous washout or excavation results therefrom, it is incumbent upon the ditch owner to protect it, and to make reasonably adequate provision to prevent animals rightly within the field where the washout occurs, from falling into it.

5. The right of way accorded to a ditch owner over the public lands must be held to be acquired with the knowledge and upon the understanding that the land itself remains open for settlement, subject only to the right of way previously obtained and the reasonable enjoyment thereof, and it is the duty of such ditch owner to maintain reasonably adequate safeguards or protective appliances against injury to the subsequent settler upon the land.

6. Notwithstanding that a snowstorm caused the animals of plaintiff to travel toward and into the dangerous excavation, the said excavation and the failure of the ditch owner to provide the proper barriers or guards are to be considered as the proximate cause of the loss of the animals; and the damage was not so remote as to exonerate the owner of the ditch from liability.

7. A judgment for a stated amount and the costs of the action taxed at ———— dollars, is not void as to the costs because the amount thereof is left blank. The amount of costs may be taxed by the clerk after the judgment is entered, and then inserted, in case a blank has been left for that purpose.

[Decided December 4, 1899.]

ERROR to the District Court, Sheridan County, HON. JOSEPH L. STOTTS, Judge.

*E. E. Lonabaugh,* for plaintiff in error.

There being no statutory liability, the ditch owner is liable only at the common law, if at all. He who is prior in time has the better right. Where one locates under the line of a ditch, the rule of coming to a nuisance applies. (Tenny v. Ditch Co., 7 Cal., 335.) A ravine may be used as a ditch. (37 Cal., 263.) As the company was operating its ditch in the usual way no negligence can be imputed to it. But, if negligent, such negligence was not the proximate cause of the injury. Two of the animals were lost in a storm, and that was the proximate cause. (Canal Co. v. Dowell, 30 Pac., 68; Coley v. City, 28 S. E., 482; Texas R. Co. v. Black, 44 S. W., 673; Pyle v. Clark, 25 C. C. A., 190; Broscoe v. Ry. Co., 28 S. E., 638; Akridge v. Ry. Co., 16 id., 81; Peters v. Bowman, 47 Pac., 113 (Cal.); Butz v. Cavanaugh, 38 S. W., 1104.)

When the excavation is not near a public highway, there is not negligence per se. (Goor v. Middlestadt, 71 N. W., 656; Dobbins v. Ry. Co., 41 S. W., 62.) A mere failure to guard against a certain result is not actionable negligence, unless under all the circumstances, it might have been reasonably foreseen by a man of ordinary intel-

ligence and prudence. (Ry. Co. v. McEwen, 22 So.,
675.) The ground of liability is negligence, and the test
is the ordinary usage of business. (Beck v. Hood, 39
Atl., 842.) The owner of lands is under no obligation
to keep them safe for the use of a person who comes
upon them not by invitation of the owner. (Fitzpatrick
v. Mfg. Co., 39 Atl., 675.) The judgment is void as to
costs. (Mosher v. Com'rs, 2 Wyo., 462.)

*Appelget & Mullen*, for defendant in error.

The statute fixing certain duties of ditch owners is
broad enough to include the injuries sued for in this ac-
tion. (R. S., Secs. 1323, 1318; Wis. C. R. Co. v. Price
Co., 133 U. S., 496; Cornelius v. Kessel, 128 id., 456.)

One must so use his property as not to injure his neigh-
bor. An actionable nuisance may be caused by an act
lawful in itself when the nuisance is a consequence of
that act. (Canal Co. v. Ter., 2 Zab., 243; R. R. Co. v.
Franz, 2 West. (O.), 359.)

Anything constructed on a person's premises which, of
itself or by its intended use, directly injures a neighbor
in the proper use and enjoyment of his property is a nui-
sance. (Stone v. Bumpus, 40 Cal., 428; Knox v. Mayor,
55 Barb., 404; Grady v. Walsner, 46 Ala., 381; Hack-
ney v. State, 8 Ind., 494; Fresno v. Fresno, 32 Pac.,
943; Susquehanna, etc., v. Malone, 9 L. R. A., 738.) It
is not a question of negligence. (Hay v. Cahoes Co., 2
N. Y., 159; McKeon v. See, 51 id., 309; Hegg v. Licht,
80 id., 579; Gas Co. v. Murphy, 39 Pa., 257; Cleveland
v. Citizens, etc., 20 N. J. Eq., 201; Wood Nuisance, 2d
ed., 497, 583; Coggswell v. N. Y., 103 N. Y., 10; 9
Paige, 575; 19 Mo. App., 75; 26 L. R. A., 693.)

The ditch owner is liable for the injury. (14 L. R. A.,
329; 9 id., 738; 26 id., 686; 46 Mich., 542; 5 Ind.
App., 22; 62 Ia., 96; 46 Ark., 207; 16 Ind., 314.)
Even trespassers have rights which can not be ignored.
(22 Kan., 686; 57 Tex., 123; 77 Ga., 102; 25 S. C.,
24; 91 Cal., 296.)

The judgment is not void because of the blank left in the entry for the amount of costs. (9 O., 155; 70 Ia., 424; 3 Cranch, 92.) The court does not fix the amount of costs. They are computed by the clerk, and may be inserted by him at any time.

POTTER, CHIEF JUSTICE.

Plaintiff in error is a ditch corporation engaged in diverting water, and conducting it upon or to the neighborhood of lands of its stockholders for irrigation. For the purpose of conveying the water across certain lands of the defendant in error, it employed and adopted, as part of its ditch, a natural depression, draw, or gulch situated on said lands, through which it was unnecessary to resort to excavation, although, as we understand the testimony, the defendant in error, who was a stockholder in the company, had plowed for his own advantage, or caused to be plowed, a few furrows to confine the water, and prevent its spreading, as it threatened to do, over more land in width than was desirable. The water is turned loose into said draw or gulch at a point near the place where it enters the lands of defendant in error, and follows it for a distance of fourteen hundred feet, where it is recaptured in a ditch constructed for that purpose. It is carried in that ditch upon said lands until another draw or gulch is reached, where it is again turned loose, and discharged into said second draw, down which it flows until it passes off from the lands of defendant in error. In some instances the witnesses testifying by reference to a certain map before them, and which is in the record, pointed out or indicated the locations and directions, accompanying their signs by such expressions as "here" and "there." Their testimony was evidently made clear to the counsel and the trial court; but the mere words of the record convey but little intelligence of the precise localities which they referred to or described, for unfortunately, their signs and finger indications are not preserved in the record, and they are left unexplained. We

believe, however, that the facts herein stated as to the course and character of the ditch across the lands in question are fairly to be gathered from the intelligible part of the evidence.

The fall down and along the fourteen hundred feet where the water is first turned loose upon the lands in question is about sixty feet, ranging from three feet and eight inches to six feet and eleven inches to each one hundred feet. Through the second draw or gulch we understand the fall to be greater than that.

Where the water is turned loose as aforesaid, no effort was made to confine the water or direct its flow, except as already stated, by the plowing of a few furrows to prevent its spreading. No contrivance was provided or employed to reduce the natural tendency of the water to cut into and wash away the soil. It did, in fact, by constant washing of the soil, cut deep channels for itself along said ravines or gulches. The map in the record indicates that through the first fourteen hundred feet where the water was allowed to run without artificial restraint, the washing was from four to eight feet, and through the second ravine, from six to twenty feet; but whether the figures are intended to disclose the width or depth of the washing or cutting, is not manifest. The defendant in error, however, testified as follows concerning the cutting along the said fourteen hundred feet draw:

"Well, there was a cut right across that forty (acres) fourteen hundred feet, that was from six to ten feet deep." Q. "And how wide?" A. "Why, it was the most of it from or more than four or five feet wide." Q. "And how is it at the bottom of the ditch?" A. "There is about two hundred feet in the middle of it from twenty-five to thirty feet wide caved in in the center along about the middle of this ditch, washed out. From there up to the northwest line about probably half the distance, it is about ten feet deep, and narrow so that a man can jump across it in some places."

Another witness, Mr. Robinson, testified that the wash, in its deepest place, is about thirty feet deep and varies in width from twenty to thirty feet along a distance of about ten rods; but it seems that he was referring to the second place where the water was turned loose upon the lands in question, and that his figures above given did not apply to the fourteen hundred feet place described by the defendant in error.

The excavations or washouts thus caused by the action of the water were not separated from the rest of the field by a fence or other inclosure, nor were any barriers erected to prevent animals from approaching and falling into them. The lands of defendant in error were inclosed and used by him as a winter pasture for some of his live stock; and certain of his horses and cattle were killed by falling into the excavation made as aforesaid in that portion of the conduit referred to as the fourteen hundred feet strip, or the draw where the waters are first discharged upon the lands.

This action was instituted by the defendant in error to recover the damages sustained by him by reason of the injury to his lands resulting from the washing away of the soil, and the loss of said horses and cattle.

The cause was tried to the court without a jury, and the findings were against the right of recovery for the alleged damage to the lands, but sustained the claim made, in part at least, for the loss of the live stock, and judgment was rendered in favor of defendant in error for the sum of one hundred and thirty dollars. The court found that the plaintiff in error had the right to maintain its ditch over and across the said lands, and that such right had accrued prior to the occupation of and entry of the lands by defendant in error; said lands anterior to such occupation and entry having been public lands of the United States. The ditch company prosecuted error and complains particularly of the third finding, which was as follows:

"The court further finds that the defendant has main-

tained its said ditch across the lands of the plaintiff, and that, at the time of the commencement of this action, the water flowing in defendant's ditch had so cut the lands of plaintiff as to render the possession and enjoyment of the plaintiff dangerous to the stock of plaintiff, that defendant negligently left the said ditch unprotected, so that the stock of plaintiff, described in the petition, fell into said ditch and were destroyed, and that said property was of the value of $130, and the defendant is liable, because of its negligence in not protecting said ditch from the encroachment of plaintiff's stock, by fence or other adequat· means, for the damages so sustained."

There is sufficient evidence to support the finding so far as it relates to the facts.  The only question to be determined is the legal one whether, under the circumstances, the plaintiff in error is liable for the damages found to have been sustained by the defendant in error on account of the loss of his live stock.

There can be no doubt that the excavations resulting from the water discharged upon the land and conducted across it, were dangerous to cattle and horses within their vicinity.  The question with which the court is confronted is whether it was the duty of the owner of the ditch and right of way to guard the dangerous locality, and to provide reasonably adequate means to prevent the approach of the land owner's stock, and thus to obviate the danger of such stock falling into the excavations, or whether that obligation rested upon the owner of the lands across which the waters were conveyed.

In the consideration of that question, the fact, if it be a fact, that the right of way was secured prior to the acquirement of the land by the defendant in error, is not, in our opinion, material.  Richardson v. Kerr, 34 Cal., 63.

The plaintiff in error had acquired a right of way over the lands for certain purposes, and for those purposes, and such as are reasonably connected therewith only.  It might enter upon the lands in a reasonable manner to repair its works, and probably to attend to such other

matters as would have a proper relation to the reasonable enjoyment of the right already obtained.   But it should be, and we think it was, its duty, to so look after and protect its ditch or conduit, that it would not interfere with the land owner and the latter's enjoyment of his premises, to any greater extent than that reasonably justified by the easement.   If the ditch constructed over another's lands is provided with such insufficient embankments as to permit the water to overflow and damage the owner of the lands, there would seem to be no question but that the ditch owner would be liable to respond in damages therefor irrespective of statutory provisions placing such a burden upon him.   And, where a railroad company has by its embankments, and a failure to provide sufficient culverts as outlets for water, caused rain waters to back up and flood the adjoining premises, resulting in the drowning of animals lawfully there, it has been held liable for the damages sustained; the overflow being, without the intervention of other agencies, the direct and proximate cause of the injury.   Sabine v. East Tex. Ry. Co., 65 Tex., 389.

Upon the principle that one erecting and maintaining a canal along the line of another's lands is liable for any damage resulting from a want of proper care in the management of the same, or for want of proper care in its construction, a canal company was held liable in damage for the flooding of the houses and barns of a land owner, and the loss thereby of grain, hay, fruit, etc., and injury to household furniture; where the flooding was occasioned by the water from melting snows and rains being impeded in its flow away off the land of complainant on account of the embankments of the ditch of the Canal Company, the latter having neglected to employ adequate means to prevent such a result.   Arrave v. Idaho Canal Co., 46 Pac., 1024 (Idaho).

It is an old and familiar maxim that one must so use his own property as not to injure that of other persons,— *sic utere tuo ut alienum non laedas*,— and, in our opinion,

plaintiff in error is not exempt from its application.    The
point of danger was located upon its right of way, and is
the result of the use thereof.    It makes no difference that,
as indicated by some of the testimony, the washing was
no greater than in other cases of water similarly conducted;
nor is it any defense that it may have been impractical to
build a flume to conduct the water over the locality in
question, or that another and longer course around the
hills would have been altogether too expensive and incon-
venient.    The right of the company to adopt and employ
the natural draw or gulch as a part of its ditch system is
not to be questioned, but if a dangerous washout or exca-
vation results therefrom, it seems eminently just and rea-
sonable to require the company to guard and protect it,
and to make reasonably adequate provision to prevent
animals rightly within the field from falling into it, rather
than to throw that burden upon the owner of the field
who does not control the right of way and has not created
the danger.

It is, no doubt, in recognition of a somewhat kindred
idea of justice that the law which has now become matter
of statutory declaration enjoins upon the ditch owner the
duty of carefully maintaining the embankments of the ditch
so that the waters may not flood or damage the premises
of others, and imposes upon him a liability for all dam-
ages accruing to the person or persons owning or claiming
the land, over which the ditch may be located, in conse-
quence of the construction, keeping up and using the
ditch.    Rev. Stat. of 1899, Secs. 897, 901.

In Wood on Nuisances, at Section 134, it is said: "When
a person is authorized to do an act upon another's prem-
ises the natural effect of which is to endanger the lives and
property of those giving the authority, the person so au-
thorized to do the act is bound to provide and maintain all
suitable and proper safeguards against injurious results
therefrom.    The law presumes that the authority given is
coupled with that condition."    According to the finding
of the trial court the right of way was obtained over the

lands while they were public, and before the occupation
of defendant in error, although the difference in time is
shown to have been slight. That fact, however, does not
alter the legal situation. The right of way accorded to
a ditch owner over the public lands must be held to be
acquired with the knowledge and upon the understanding
that the land itself remains open for settlement subject
only to the right of way previously obtained, and the
reasonable enjoyment thereof; and we think it becomes
incumbent upon the proprietor of such right of way to
furnish and maintain reasonably adequate safeguards or
protective appliances against injury to the subsequent
settler upon the land. The maxim already adverted to
applies to such a case.

In Joseph v. Ager (Cal.), 41 Pac., 422, it is said:

"The dominant owner's encroachments can be justified
only to the extent of his easement. As to all beyond that
his acts constitute a private nuisance, for which an action
may be maintained. With regard, therefore, to all arti-
ficial easements, he is bound to keep his works in such a
state that they will cause no incumbrance to his neighbor
beyond that warranted by the easement; and if he
neglects this, he brings himself within the ordinary case
of a violation of the rule, sic utere tuo ut alienum non
laedas, and is of course liable to an action."

A case which quite clearly approaches the one at bar in
principle is Williams v. Groucott, 4 Best & Smith, 148
(116 Eng. Com. L.), where it was held that a person
entitled to the minerals under the land of another with
license to make a mine-shaft opening into it, is, in the
absence of a stipulation to the contrary, under a legal
obligation to the owner of the surface soil to fence the
shaft so as to prevent its being a source of danger to his
cattle which may be upon it; and is liable to an action for
injury accruing to those cattle for want of such fencing.
See also, Sybray v. White, 1 M. & W., 435.

It seems that two of the animals fell into the ditch dur-
ing a snowstorm, and the inference is drawn, and prob-

ably correctly so, that the storm caused them to travel toward and into the dangerous excavation. Hence it is contended that the want of care on the part of the ditch owner was not the natural and proximate cause of the injury.

A defendant is not liable, as a general rule, for anything beyond the natural, ordinary, and reasonable consequences of his conduct. 1 Sutherland on Damages, p. 57. We do not deem it necessary to extend the discussion of this question further than to say that it is clear that the result might reasonably have been foreseen as probable. Storms are liable to occur. They are natural and not extraordinary. It is just such exigencies that require barriers to be erected to keep cattle from getting into a dangerous place. The washout and the failure to provide the proper safeguards is to be considered, in our opinion, as the cause of the loss of the cattle and the damage was not so remote as to exonerate the plaintiffs in error from liability.

The judgment was entered as follows: "Wherefore it is by the court considered and adjudged that the plaintiffs have and recover judgment against the said defendant in the sum of $130, his damages so as aforesaid sustained and the costs of this action taxed at $———." It is contended by counsel for plaintiff in error that the judgment is void as to the costs, for the reason that a blank appears where the amount of the costs should have been inserted.

The costs are under our practice, taxed by the clerk. Under the statute as existing prior to 1890 a specific fee was fixed to be collected by the clerk for that service. They may not be and are not, generally at least, ascertained at the time judgment is rendered, or even when it is entered upon the journal. Generally, the costs follow the judgment as an incident thereof; and it would be sufficient in a judgment, to say, "and his costs in this behalf laid out and expended," or words of similar import, without stating or attempting to state the amount. The judgment is for the "costs of this action." The amount

thereof may be taxed by the clerk after the judgment is entered and then inserted, in case a blank has been left for that purpose. We think the more reasonable rule is, under a practice such as our own, that the judgment for costs in this case is not void. Lessee of Wilkins Heirs v. Huse, et al., 9 O., 154; Frankel v. C. B. & P. Ry. Co., 70 Ia., 424; Linton v. Housh, 4 Kan., 535; Clippinger v. Ingram, 17 Kan., 584; Calhoun v. Terry, Porter & Co., 21 Conn., 525; Leyde v. Martin, 16 Minn., 38; Beedle v. Mead, 81 Mo., 297; Palmer v. Glover, 73 Ind., 529.

In Clippinger v. Ingram, supra, the judgment entry was similar to that in the case at bar. The court said: "It will be seen that the costs of this case have not yet been taxed, and the judgment with reference to the amount thereof is left blank. It would seem that the plaintiff in error has fears that the costs may be taxed erroneously. We presume, however, that they will be taxed correctly. The judgment will certainly authorize a correct taxation of the costs. If, however, the clerk should tax them erroneously, the court would undoubtedly correct the taxation on motion." The judgment was affirmed notwithstanding the character of the judgment entry.

In Frankel v. Ry. Co., supra, the supreme court of Iowa said: "Defendants' counsel insists that there was no judgment for costs in the circuit court. In each case the record shows an entry in the words, 'Judgment for costs, taxed at $———.' This is the uniform practice of entering judgments. Probably it is usual for the amount of the costs to be entered after the term, when the clerk finds time to tax them. But the judgment is *for the costs*, which the clerk is authorized to tax at any time he may fill the blank. The costs are often retaxed when the amount, even should the blank have been filled, could be changed."

Counsel for the plaintiff in error relies upon the case of Mosher v. Board of County Commissioners, 2 Wyo., 443. That case, however, is easily distinguished from the one now before us — there the only judgment rendered was as

follows: "The court therefore finds for the defendants, and that the defendants recover their costs taxed at $—— from and of the plaintiff." It is doubtful if that amounted to a judgment at all even had the blank been filled. It would seem to have been a finding only. But the court held that as the judgment was only for costs, it was no judgment because it was not exact in amount. It will be observed that the judgment did not pretend to afford any relief whatever except the recovery of costs. The ordinary language used in such a judgment, to the effect that the defendant go hence without day, or that the action be dismissed, was absent.

We perceive no error in the record, and the judgment will be affirmed.

*Affirmed.*

CORN J., and Knight J., concur.