This is a suit by the plaintiff to recover damages from the defendant company in the sum of $1,500 for personal injuries which she claims to have received when the car in which she was riding with her husband ran into the rear end of a large delivery truck of the defendant company on the Baton Rouge-Hammond Highway about two miles east of Harelson on June 18, 1940, about four o'clock P.M. The car driven by plaintiff's husband was going east, and it is alleged that the truck was parked in the lane of traffic facing in an easterly direction, the same direction in which the car was traveling; that the truck was so parked as to leave less than a nine foot clearance on its left, or the north side, of the highway; that it was cloudy and raining and almost dark, which condition of the weather and consequent poor visibility prevented plaintiff's husband from seeing this parked truck in time to avoid striking it. Plaintiff alleges that her husband was driving at a speed of approximately 25 miles per hour and that he was guilty of no negligence contributing to the accident, but that the accident was caused solely by the unlawful parking of the truck.
The defendant admits the collision of the Penton car with the rear end of its truck, and admits that the driver of the truck had *West Page 548 
stopped or parked the same for the purpose of permitting his helper to ascertain from a nearby residence the location of the home of one of defendant's customers at which some merchandise on the truck was to be delivered by the driver in the course of his employment. The defendant also admits that a slight rain was falling at the time, and alleges that a heavy rain had been falling prior thereto. Defendant admits that its employee parked the truck, but alleges that the truck was parked with its left wheel on the edge of the black top and the right wheels as near to the south ditch as possible, and that when the truck was so parked the right wheels were on the shoulder at least 3 1/2 feet from the south edge of the black top; that the pavement at this point is 18 1/2 feet wide, the truck 6 feet 11 inches wide, thus leaving more than a 15-foot clearance on the north or left side of the pavement. Defendant alleges that the sole proximate cause of the accident was the carelessness and negligence of Penton in driving his car at a grossly excessive speed, his failure to keep a proper lookout and apply his brakes in time to avoid the collision, and in his attempting to pass to the left of the truck when it is alleged that approaching vehicles obstructed his passage.
In the alternative, and in case it is found that the truck driver was negligent in parking the truck, the defendant alleges that such negligence was remote and passive and was not a contributing factor in causing the accident; and further in the alternative, and in case it is found that defendant's truck driver was negligent and that his negligence contributed to the accident, it then alleges that the plaintiff was guilty of independent negligence in her failure to warn her husband of the parked truck.
The trial court rendered judgment dismissing plaintiff's suit on the ground that if there was negligent parking of the truck, it was not a proximate cause of the accident, but that the proximate cause of the accident was the reckless driving of plaintiff's husband. The plaintiff has appealed.
The testimony as to the exact position that the truck was parked on the highway is confusing and conflicting. The trial judge found, after carefully analyzing the testimony, that there was a slight preponderance in the testimony to the effect that the truck was parked on the black top, or practically so. Plaintiff and her husband both testified that the truck was parked completely on the pavement in their lane of traffic, and four other witnesses who reached the scene of the accident shortly after it occurred partly corroborated their testimony by testifying that the truck was parked mostly on the pavement with its right wheels on the shoulder, there being a difference, however, in their testimony as to how much of the truck remained on the pavement, the conclusion to be drawn from their testimony being that a greater part of the truck remained on the pavement in the south traffic lane. Two witnesses, employees of the defendant company, a Mr. White and a Mr. Hurt, who came to the scene of the accident shortly after it occurred, testified that the truck was about half on and half off the pavement, to be exact, Mr. White testifying that the right wheels of the truck were between three and four feet off the pavement and Mr. Hurt testifying that the truck was about three feet on the pavement and four feet off. The negro driver testified that the truck was almost completely off the pavement and on the shoulder of the road. Taking all this testimony into consideration, and without going into the details of the testimony of each witness on this point, we agree with the trial judge that the preponderance of the testimony shows that the truck was parked principally on the pavement and left less than a 15-foot clearance on the north or left hand side of the highway.
It is not clear from the testimony as to just what was the condition of the weather at the time of the accident, plaintiff and her husband testifying that it was raining hard making visibility very poor, and some of the witnesses testifying that it had been raining hard but had either stopped or was merely drizzling. In any event, the evidence is clear that it had been raining very hard and the pavement was wet and slippery and the ditches on the sides of the road were full of water. In fact, the defendant admits in its answer that it had been raining hard and was drizzling at the time of the accident. We therefore conclude that it had been raining hard and was misting or drizzling at the time of the accident. At four o'clock in the afternoon of June 18th, the sun was some three hours high and, of course, it was good daylight and there was no occasion for any cars or trucks to have lights. In fact, there is no evidence that the visibility was so poor as to require any of the cars in the vicinity of the accident to have their lights burning. *West Page 549 
Plaintiff's husband testified that he first saw the truck when he was 50 or 75 yards to the rear of it; that he was traveling between 25 and 35 miles per hour at the time he first saw the truck. When he was between 100 and 150 feet to the rear of the truck, he pulled to his left to pass and slightly accelerated his speed, but he saw two cars coming from the opposite direction making it impossible for him to pass and he then applied his brakes to check his speed as he pulled back into his right lane of traffic. At that time he thought the truck was moving, but after he had gotten almost on the truck, he realized that the truck was stopped and seeing that he was about to run into the truck, attempted to drive his car into a driveway leading into a private residence on the south side of the road, but owing to the slippery condition of the pavement and the fact that the rear end of the truck partly blocked the entrance into the driveway, the left part of his car struck the right rear end of the truck, causing the injuries to his wife who was sitting on the front seat to his right.
It is obvious from the testimony that plaintiff's husband was guilty of negligence in several respects. In the first place, he should have seen the parked truck in ample time to stop his car. He admits seeing two other cars approaching from the opposite direction 100 or 150 feet east of the truck, and there would seem to be no reason why he should not have seen this large parked truck much closer to him than these oncoming cars. If he was 100 or 150 feet from the truck when he first began to check the speed of his car, there is no reason why he should not have been able to stop his car before striking the truck. The fact that his car skidded for some distance and then struck this large and heavy truck with sufficient force to push it several feet forward indicates that he was going at a very fast rate of speed even when his car hit the truck.
When there is any condition in the weather which affects visibility, such as fog, rain, or smoke, it is the duty of the driver of a motor vehicle to take extra precautions to meet such unusual circumstances. 1 Blashfield, Cyclopedia of Automobile Law and Practice, Perm.Ed., p. 501, § 689. The evidence in this case does not show, however, that there was any serious impairment of Penton's vision as it seems that he was able to see a sufficient distance, as already stated, for him to be aware of the presence of the truck in his lane of traffic and avoid running into it had he been going at a proper speed and keeping a proper lookout, with his car under control.
Under the finding of fact as to the parking of the truck, it is obvious that the truck driver violated Rule 15, Sec. 3, Act 286 of 1938, which prohibits a motor vehicle being parked or left standing upon the paved portion of the highway without leaving a clearance of at least 15 feet on the main traveled portion of the road opposite the standing or parked vehicle. The question then arises whether or not, under the particular circumstances of this case, this negligence of the truck driver was a proximate or contributing cause of the accident. The truck had been parked for four or five minutes when the collision occurred.
As to what constitutes the, or a proximate, cause of an accident, depends largely upon the particular circumstances of each case. One of the most satisfactory definitions of proximate cause is that the accident must be the natural and probable consequence of the act of negligence, or, stated in a different way, the negligence and the resulting injury must be known by common experience to be a natural and usual sequence — that is, according to the usual course of events, the accident follows the negligence. 4 Blashfield, Cyclopedia of Automobile Law and Practice, Perm.Ed., pp. 346, 347, § 2533.
Applying this rule, can it be said that the natural and probable consequence of the improper parking of the truck in the highway would be for a following car to run into it from the rear in the daytime and under conditions as they then and there existed? The answer is that it is natural and probable that the driver of an approaching vehicle would see such a parked truck and avoid striking it where there is no obstruction to the vision of the driver of the approaching car, or where the conditions are such as not to seriously impair visibility, and where he is driving at a lawful speed and has his car under proper control.
This court held in the two cases of Hudson et al. v. Provensano, La.App., 149 So. 240, and Boudreaux v. Iseringhausen, La.App., 177 So. 412, that the parking of a motor vehicle on the pavement without leaving the required clearance was, under the facts and circumstances shown in those two cases, a contributing cause of the accidents. *West Page 550 
It will be noted, however, that in those two cases the accidents occurred at night. In the Provensano case, the accident occurred around five o'clock in the morning in December, while it was yet dark, and in the other case the accident occurred at night as the question of want of lights was also involved. We do not hold that the unlawful parking of a motor vehicle may not be a proximate cause of an accident where it is run into from the rear by an approaching car. But, as already indicated, whether or not such unlawful parking is a proximate or contributing cause of an accident depends upon the particular facts and circumstances of each case. See Rector v. Allied Van Lines, Inc., et al., La.App., 198 So. 516, and Roberson v. Rodriguez et al., La.App., 186 So. 853. We agree with the trial judge that the negligence of the truck driver in parking the truck had become passive and too remote to be a contributing cause of the accident, and that the negligence of plaintiff's husband was the direct, immediate and proximate cause of the accident.
For the reasons assigned, the judgment appealed from is hereby affirmed at the cost of appellant in both courts.