Ferrin Richard FRAZIER, Appellant
(Defendant below),
and
Joseph Heyduk (Defendant below),
v.
Clara POKORNY, Appellee (Plaintiff below).
No. 2902.

Supreme Court of Wyoming.

Feb. 9, 1960.

Murane, Bostwick & McDaniel, R. R. Bostwick, Casper, for appellant.

G. Joseph Cardine, Casper, Joseph C. Vesely, Hopkins, Minn., for appellee.

Before BLUME, C. J., and PARKER and HARNSBERGER, JJ.

Chief Justice BLUME delivered the opinion of the court.

Joseph Heyduk, one of the defendants in this case, and Clara Pokorny, plaintiff in this case, together with the latter's husband, Henry Pokorny, were traveling from Minnesota to the Teton mountains on July 26, 1956. On that day they arrived in Casper about five o'clock in the afternoon and were directed to the Pine Lodge Motel in Mountain View directly west of Casper to stop for the night. The motel was located on the south of an intersection of Highway 20–26 going east and west and a graveled cross street running north and south, so that as Heyduk was traveling west it was necessary to make a left turn in order to go to the motel. (Witnesses and counsel refer to Heyduk's movement as a left turn although it might be contended that he was really crossing the highway, but for the purposes of discussion here we think the distinction is not material.) The intersection is located in a business area on what is called a slight rise with a slight dip to the west and a slight dip to the east. The road was dry, the weather warm, and the vision from the intersection to the west was perfectly clear for a half mile or more. As Joseph Heyduk was making the left turn at about 5:30 p. m., his car and the car of Ferrin Richard Frazier, one of the defendants herein, collided, seriously injuring the plaintiff Clara Pokorny who was a guest in the car of Joseph Heyduk. As a result of the accident, she (using the description as given by counsel for plaintiff) suffered severe internal injuries, four separate breaks, fractures and lineal fractures of the pelvic bones, a broken fifth rib, injuries to her back requiring her to wear a brace even at the time of the trial, and diplopia or double vision which was partially corrected by her glasses. Plaintiff received one pint of plasma and six pints of whole blood necessitated by shock and loss of blood from internal bleeding. A catheter or tube was introduced into her urinary bladder which continuously drained grossly bloody urine for four days. Plaintiff's legs were placed in continuous traction by use of a system of ropes and pulleys and a four or five pound weight attached to each leg. She was immobile for four and a half weeks. After five weeks plaintiff was removed on a stretcher from Natrona County Memorial Hospital and flown to her home in Minnesota. It was nine weeks after the accident before plaintiff could even sit next to her bed, and nine months before she could resume her household duties. Plaintiff's doctor, medical and hospital bills were $3,138.23. She brought an action making Joseph Heyduk a defendant, alleging that he was guilty of gross negligence, and also in the same action sued Frazier, alleging that he was negligent in colliding with the car of Heyduk. The case was tried to a jury. After the close of plaintiff's testimony and again at the close of the whole case, defendant Frazier moved for an instruction to the jury to return a verdict in his favor. Both motions were overruled. After the return of the verdict, defendant moved for judgment notwithstanding the verdict. That motion, too, was overruled. The jury re-

turned a verdict finding for both the plaintiff and the defendant Heyduk and against the defendant Frazier and assessing plaintiff's damages in the sum of $13,138.23. Judgment was entered in accordance with the verdict and from that judgment the defendant Frazier has appealed to this court.

Defendant Heyduk testified in substance as follows: He is a mechanical engineer and lives in St. Paul, Minnesota. He is Mrs. Pokorny's brother. He invited Henry Pokorny and Clara Pokorny, husband and wife, to go with him to the Teton mountains. They drove in Heyduk's car, a two-door 1952 Ford sedan weighing about 3200 pounds. Plaintiff was riding in the back seat. They arrived in Casper about five o'clock in the afternoon of July 26, 1956, stopped at a gasoline station of the Standard Oil Company, asked for a place to stop for the night, and were told that the Pine Lodge Motel was a good place. The motel is located west of Casper in Mountain View and, in order to reach that from the main highway going east and west, it was necessary to cross that highway to the south. Heyduk drove the car west along Highway 20–26, located the Pine Lodge Motel, and arrived at the intersection which led to the motel. A number of cars were following him and he pulled off for a few seconds to the right shoulder of the highway, that is to say, to the north. When the cars back of him had passed, he looked in the mirror, found no more cars coming from the east, and then looked to the west where he had clear vision. He saw no car coming toward him from the west at a distance of three to four hundred feet away and thought that he had plenty of time to make the turn. He then signaled and made a left turn in low gear. Defendant Heyduk was asked:

"Q. Tell the Court and jury when you first saw the Frazier automobile? A. Well, when I was almost in the middle [of the east and west highway]. I looked again, as I usually do, and I seen this car [Frazier's] bearing down on me. So it looked like a collision, so it was about, maybe 100 feet away, maybe a little more, and he was coming fast. * * *"

At another place he estimated Frazier's speed at 55 to 60 miles an hour but this testimony was struck, but his testimony that Frazier's car was coming rapidly was permitted to stand. Heyduk himself was traveling very slowly and when he saw Frazier's car he stopped. He was then about on the south edge of the oiled portion of the highway; the rear wheels of his car were then about on the center line of the highway and the rear end of the automobile approximately three feet from the center thereof. Frazier put on his brakes when he was about eighty feet away. He had ten feet plus the shoulder to go around the rear of Heyduk's car. Heyduk could have gone on but, as Frazier was coming toward him at a rapid pace, "It looked like a hopeless case there, so I stopped, and I thought he'd go in back of me or in front of me." Heyduk thought that Frazier could also have passed in front of his car. Frazier kept traveling straight east in the south lane and hit Heyduk's car practically in the center on the right side. Heyduk's car was pushed back about ten feet and the back end swung around and went over to a steel sign of the Pine Lodge Motel, bending it, and the car was jammed under that sign. The car traveled in all about 100 feet after it was struck. Heyduk was thrown out of the car and was unconscious for a little while. Mrs. Pokorny was knocked unconscious and did not regain consciousness until after she had been at Memorial Hospital for some time. Frazier asked Heyduk, "Why did you stop?"

Henry Pokorny testified in substance as follows: He saw the Frazier car first when it was some 900 to 1,000 feet away. That car was then traveling at a speed of 60 to 65 miles an hour. There was a sign 490 feet west of the above-mentioned crossing which indicated the lawful speed to be 40 miles an hour. The witness next saw the Frazier car when it was 300 feet away and still coming at 60 to 65 miles per hour.

Frazier put on his brakes when he was 40 to 50 feet away. The Heyduk car stopped. The rear wheels were approximately in the center of the oiled highway. When the Frazier car collided with Heyduk's car the left door of the Heyduk car flew open. Heyduk was thrown out and bounced several times on the ground before stopping. The witness himself had three or four broken ribs.

William A. Estes, Jr., a highway patrolman, was a witness in the case. He happened to travel along Highway 20–26 about the time when the accident occurred and was only a short distance away when he was called back to consider the situation. The oiled surface of Highway 20–26 is 22 feet wide with a graveled shoulder on the north of the width of ten feet. The so-called center line was ten feet from the south edge, leaving twelve feet for the north lane. He examined the skid marks made by Frazier's car and these extended to a distance of 79 feet. The day was clear, the sun was shining, and the condition of the highway generally was about average. He testified to a table showing the distance required for stopping, and the table was introduced in evidence subject to appellant's objection as to relevancy. It was taken from a national publication but the witness had verified the correctness of the table by tests made by himself. These tests showed that the table was approximately correct. According to the witness, it takes, under average conditions—as was true here—three-fourths of a second's reaction time, that is to say, when danger is apprehended it would take that length of time before the driver could put on his brakes. The table shows that if a driver was driving at 40 miles an hour he would travel, after a reaction time and with the brakes applied, a distance of 70 feet before he would be able to stop.

Defendant Frazier testified in substance as follows: On the day of the collision heretofore mentioned, he had been to the Casper airport which is about eight miles west of the point where the collision occurred. He had traveled at the rate of 60 miles an hour but when he came to the 50 mile zone he slowed down and then slowed down some more as he approached the 40 mile zone which was approximately a block away from the intersection heretofore mentioned. In a deposition that had been taken, he had testified that he first saw the Heyduk car when he was 70 feet away, but when on the witness stand in this case he testified that he first saw the Heyduk car when he was 450 feet away and he kept on watching it. He stated that Heyduk at that time was on the north shoulder of the highway and he thought that he intended to travel west in the north lane of traffic. Heyduk was making a left turn when the witness was some 75 feet to the west. He could have gone around the rear end of the Heyduk car but he saw no reason for it and he made no effort to do so because he thought that Heyduk was going to wait at the center line of the highway. However, the latter never stopped. Frazier drove a 1953 Cadillac weighing 5400 pounds. The damage to the car by reason of the collision was extensive and he was compelled to pay some $1,400 in order to have it repaired. At the time of the collision the road was clear. There was no traffic on the road except his own car and that of Heyduk.

1. Counsel for appellant say that Frazier was not negligent, but we think that the jury had the right to find the contrary in several respects. There is some conflict in the evidence. We find it somewhat difficult to reconstruct the exact facts. Henry Pokorny, we think, was wrong when he stated that Frazier stepped on his brakes when 40 to 50 feet away. The skid marks showed that he did so when he was some 79 feet from the place of collision. We think that Frazier's testimony was incorrect when he stated that Heyduk started to turn left when he, Frazier, was 70 feet away. Heyduk would have seen him if that were true. He saw Frazier, as he testified, when he was in the middle of the blacktop highway and Frazier was then 100 feet away. Heyduk testified that he stayed on the north shoulder of the

highway only a few seconds, that he then signaled and began to make the left turn, and that the road to the west was clear for 300 to 400 feet. Henry Pokorny saw Frazier when the latter was some 300 feet away. That Heyduk did not then see Frazier was probably due to the fact that he was sitting on the left side of the car and did not have the clear vision which Henry Pokorny had. If Frazier was 300 feet away when Heyduk signaled, he should have seen the signal since the vision was clear. Assuming, however, that he could not see the signal, still, as he himself testified, he saw Heyduk on the north shoulder of the highway when he was 450 feet away. A motor vehicle driver does not ordinarily stop on the shoulder of a road for an idle purpose. Heyduk evidently did not intend to turn to the right since he would not have stopped had he so intended. Probably either his car was out of order or he intended to turn to the left. He was at an intersection in a business locality where cars might want to cross from north to south at any time, so it is not unreasonable to say that Frazier might well have anticipated when he was 450 feet away that Heyduk might take a left turn. It is stated in 60 C.J.S. Motor Vehicles § 357b, p. 847, that: "It is the duty of a driver who is approaching an intersection to have his car under such control as to be prepared for traffic or conditions which he may find or reasonably expect there." See also Estabrook v. Main, 110 Conn. 271, 147 A. 822. When Heyduk was in the center of the blacktop highway, Frazier was about 100 feet away. Heyduk traveled from three to five miles an hour. If he traveled at three miles an hour and Frazier was 300 feet away when Heyduk made the turn, as some of the testimony indicates, then while Heyduk traveled about ten feet Frazier traveled about 200 feet or twenty times as fast, namely at 60 miles an hour. As indicated, Henry Pokorny testified that the Frazier car was traveling at 60 to 65 miles per hour. That was an unlawful speed, and he should not have traveled at more than 40 miles per hour according to a sign along the highway.

It is stated in 1 Blashfield, Cyclopedia of Automobile Law and Practice, perm. ed., p. 615 that "a driver must have his car under such control that it can be stopped before doing injury in any situation reasonably likely to arise." In the same volume at p. 716, it is said:

"The driver of a motor vehicle is bound to anticipate that he may meet other vehicles anywhere on the highway, and must maintain a proper lookout for them, keep his vehicle under such control as will enable him to avoid a collision with other vehicles driven with proper care and caution, and stop, if the situation requires."

It would seem that counsel for Mrs. Pokorny are correct in saying that if Frazier had obeyed the foregoing rule and had traveled at the rate of 40 miles per hour he would have stopped the car and avoided the collision. The undisputed evidence is that Frazier's skid marks extended 79 feet back from the place of impact. The table, which as we later explain was properly admitted, shows at what distance a man traveling at a set rate of speed can stop. It shows that a motor vehicle driver traveling at 40 miles per hour and who applies his brakes firmly, as apparently Frazier did at 79 feet away, could stop when he had traveled 70 feet—nine feet short of striking the Heyduk car.

Furthermore, the evidence shows that—not even Frazier's testimony contradicts it—at the time of the impact the rear wheels of the Heyduk car were at the center line of the oiled highway and the rear of the whole car was about three feet further north. The center line, as testified to by the witness Estes, was ten feet from the south line of the oiled road. The rear end of the car was then about thirteen feet from the south line of the road, leaving a clear space of nine feet north of the blacktop road. Then there was a graveled shoulder ten feet in width on the north, thus giving Frazier a space of nineteen feet in width at the rear of Heyduk's car which he could have taken and thus avoided the collision. It is somewhat hard to

understand that Frazier did not swerve his car to the left in order to take this road of nineteen feet in width. The evidence is clear that there was no traffic coming from the east or west. The only explanation that we can see is that Frazier traveled at such a high rate of speed that when he was confronted with the Heyduk car he became utterly confused and he must bear his share of responsibility for that confusion.

Counsel for appellant contend that Frazier was unable to foresee the collision in question and that foreseeability is essential in order to hold him liable herein. They cite us to the case of Big Goose and Beaver Ditch Co. v. Morrow, 8 Wyo. 537, 59 P. 159, 80 Am.St.Rep. 955. However, it was not necessary that he should have foreseen a particular injury. It is stated in 38 Am.Jur. Negligence § 62, p. 713:

> "While the test of foreseen or foreseeable consequences is applied generally in many, although not all jurisdictions, in determining proximate cause, such test does not require that the negligent person should have been able to foresee the injury in the precise form in which it in fact occurred, or to anticipate the particular consequences which actually flowed from his act or omission. * * *"

And in the case of Hines v. Sweeney, 28 Wyo. 57, 201 P. 165, 169, 201 P. 1018, we said, "And if an injury of some character should have been reasonably anticipated by him, then that fact may be decisive of the question of negligence."

Counsel for appellant further contend that the collision was not the natural and probable consequence of Frazier's driving. In the case of Penton v. Sears, Roebuck & Co., La.App., 4 So.2d 547, 549, the court stated:

> "As to what constitutes the, or a proximate, cause of an accident, depends largely upon the particular circumstances of each case. One of the most satisfactory definitions of proximate cause is that the accident must be the natural and probable consequence of the act of negligence, or, stated in a different way, the negligence and the resulting injury must be known by common experience to be a natural and usual sequence—that is, according to the usual course of events, the accident follows the negligence. 4 Blashfield, Cyclopedia of Automobile Law and Practice, Perm. Ed., pp. 346, 347, § 2533."

A more specific statement is found in 38 Am.Jur. Negligence § 57, p. 707, where it is stated:

> "* * * An injury is deemed the natural and probable result of a negligent act if after the event, and viewing therefrom in retrospect to the act, the injury appears to be the reasonable rather than the extraordinary consequence of the wrong. * * *"

A like statement is found in 4 Blashfield, Cyclopedia of Automobile Law and Practice, perm. ed., pp. 15–16. When a motorist drives at an excessive and unlawful speed on the highway he knows, or should know, especially on account of the numerous automobiles on the roads today, that he may meet a situation which may endanger the safety of others and that *some* fatal accident may happen that is the ordinary and not the extraordinary result of his speed.

Counsel for appellant say that Heyduk's driving was "the poorest driving antics of record" and that it is not just that Frazier alone should be held liable for the injuries. of Mrs. Pokorny. We suspect, in view of the small amount of the verdict, considering her injuries, that the jury perhaps reasoned somewhat along the same line as counsel for the appellant even though they held Heyduk not liable, but that was because since Mrs. Pokorny was his guest he could be held liable only if he was guilty of gross negligence under the so-called guest statute. Counsel call our attention to § 31–119, W.S.1957, which provides:

"The driver of a vehicle within an intersection intending to turn to the left shall yield the right-of-way to any vehicle approaching from the opposite direction which is within the intersection or so close thereto as to constitute an immediate hazard, but said driver, having so yielded and having given a signal when and as required by this act, may make such left turn and the drivers of all other vehicles approaching the intersection from said opposite direction shall yield the right-of-way to the vehicle making the left turn."

It is quite clear under the provisions of this statute that whether or not a driver of an automobile is justified in turning to the left at a particular time depends on the circumstances. If Frazier had, for instance, been driving at the rate of ten miles per hour when he was 300 to 400 feet away from the intersection, the collision could not have occurred. But let us admit, for the purposes of this case, that Heyduk's driving was "the poorest driving antics on record" and, as we held in Husted v. French Creek Ranch, Inc., Wyo., 333 P.2d 948, 955, that Frazier had a right to believe that Heyduk would stop before entering his lane of traffic, still that does not relieve Frazier from liability if, as hereinafter shown, he contributed to the collision, for the negligence of Heyduk was not imputable to Mrs. Pokorny since she had nothing to do with the driving. In Chandler v. Dugan, 70 Wyo. 439, 251 P.2d 580, 585, 586, Mrs. Chandler was situated just as Mrs. Pokorny was in the case at bar, and we stated in that case:

"Figuratively speaking, the plaintiff was in the position of a person being injured as an innocent bystander. Mrs. Chandler was not engaged in a joint or common enterprise with her husband. Neither did she have any control over the car in which she was riding. Under these circumstances the authorities are in agreement that if she is injured by the concurring negligence of the driver of her car and some third party, the negligence of her driver is not imputable to her so as to prevent a recovery for damages from such third party. See Annotation Imputing Drivers Negligence to Passenger. 90 A.L.R. 631. * * *"

See also 5A Am.Jur. Automobiles and Highway Traffic § 817.

Counsel for appellant contend that the collision would not have occurred if Heyduk had not made the left turn as he did and so conclude that the proximate cause was Heyduk's negligence. It is, of course, true that if Heyduk had not been in the intersection no collision would have occurred, but the question as to his sole responsibility is a different matter. It may just as truly be said that the collision would not have occurred if Frazier had not been on the scene. But for him (just as in the case of Heyduk) there would have been no collision. In 2 Harper and James, The Law of Torts, 1956, p. 1110, the authors state:

"A rough working test of this [causal] relation, valid for most cases and enjoying wide currency, is the 'but for' or *sine qua non* test: defendant's negligence is a cause in fact of an injury where the injury would not have occurred *but for* defendant's negligent conduct. It is probably safe to say that wherever this test is met, the cause in fact relation does exist. * * *"

See, however, in that connection, Lemos v. Madden, 28 Wyo. 1, 200 P. 791, 794. In Prosser on Torts, 2d ed., p. 221, it is said:

" * * * The defendant's conduct is a cause of the event if it was a material element and a substantial factor in bringing it about. Whether it was such a substantial factor is for the jury to determine, unless the issue is so clear that reasonable men could not differ. 'Substantial factor' is a phrase sufficiently intelligible to the layman to furnish an adequate guide in instructions to the jury, and it is neither

possible nor desirable to reduce it to lower terms. * * *"

We cited and quoted this rule in Phelps v. Woodward Const. Co., 66 Wyo. 33, 204 P. 2d 179, 187, and in Chandler v. Dugan, supra, 251 P.2d 586. In 4 Blashfield, Cyclopedia of Automobile Law and Practice, perm. ed., p. 39, it is stated:

> "There may be more than one proximate cause of the same injury, and the mere fact that some other cause cooperates with the negligence of the defendant to produce the injury for which suit is brought does not relieve him of liability."

On pages 41–44 of the same volume the author states:

> "Under the principle stated in the foregoing section, if the negligence of defendant is one of the proximate causes of the injury of which plaintiff complains, he cannot escape liability by showing that the negligence of a third person also contributed to the injury, and that the accident would not have happened but for such negligence of the third person.
>
> "This rule is applicable though the two wrongdoers owe different degrees of care, or though there are different degrees of negligence."

To the same effect see 38 Am.Jur. Negligence § 63, and 65 C.J.S. Negligence § 110. See also Hester v. Coliseum Motor Co., 41 Wyo. 345, 285 P. 781. We think that under the rules heretofore mentioned the jury was justified in finding that Frazier's negligence was a factor in causing the collision here mentioned.

■ 2. Counsel for appellant contend that the court erred in admitting the testimony of Patrolman Estes as to the table of ability to stop heretofore mentioned. Counsel, however, had agreed that the table might be admitted, subject to the objection of relevancy. Counsel now say that the identical situation was not shown and therefore the table was not relevant. The witness Estes testified that the table was applicable under average conditions and that on the day of the collision here in question conditions were average. We think there was no error on the part of the court in this respect.

■ 3. Counsel for appellant further contend that Mrs. Pokorny and Heyduk were engaged in a joint enterprise and that, hence, the negligence of Heyduk is imputable to Mrs. Pokorny. The testimony herein shows that Heyduk had the trip planned before leaving Minnesota, including designation of the towns in which they would spend each night and that Mrs. Pokorny participated in no discussions as to whether Heyduk would stop the car, when they would stop, or where they would ultimately go. No payment of any kind was made to Heyduk nor was there any agreement to make any payment to him for the trip. Plaintiff exercised no control over Heyduk in the operation of the car nor did she have any right of such control. Heyduk testified that he planned the entire trip, getting a map beforehand to lay out the route and encircling the towns where they were going to stop, and that the plaintiff never told him where to go, how to drive the car, or what to do, and if she had told him he wouldn't have done it anyway. We think that under this testimony the claim that plaintiff and Heyduk were engaged in a joint enterprise must be overruled.

■ 4. Counsel for appellant complain of Instruction No. 11 of the court which reads as follows: "The Court instructs the jury that it is established in this case that the lawful speed limit at the time and place where this accident occurred was 40 miles per hour." The evidence is undisputed that the lawful speed was as stated by the court so we see no error. Kahn v. Traders' Ins. Co., 4 Wyo. 419, 34 P. 1059, 1069, 62 Am.St.Rep. 47. Counsel further complain of Instruction No. 12 given by the court. That instruction is not in the record and so we cannot consider it.

The judgment of the trial court is affirmed.

Affirmed.