WINEKOFF v. POSPISIL.

1. AUTOMOBILE—STOPPING DISTANCE—EVIDENCE—CHARTS—ADMISSI-
BILITY.
 Chart appearing in pamphlet published by Department of State
 showing stopping distances of an automobile from various
 speeds *held*, to be inadmissible to show stopping distances for
 a particular automobile in a negligence action, because it
 amounts to an *ex parte* statement based on experiments
 conducted under conditions which might or might not be
 applicable or relevant to the case being tried.

2. SAME—NEGLIGENCE—EVIDENCE—STOPPING DISTANCE—CHARTS.
 Admission into evidence, during trial of an automobile negli-
 gence action, of a handbook published and distributed by
 the Secretary of State showing, among other things, the
 distance required to stop an automobile from various speeds,
 which was inadmissible, *held*, reversible error where the chart
 was referred to several times and was taken into the jury
 room by the jury during deliberations, and it is impossible
 to say with certainty that the admission of the chart did not
 affect the jury's verdict.

3. EVIDENCE—IMPROPER ADMISSION—APPEAL AND ERROR.
 Improper admission of evidence must be prejudicial before there
 will be reversible error.

Appeal from Monroe, Weipert (William J., Jr.),
J. Submitted Division 2 February 6, 1968, at
Lansing. (Docket No. 2,386.) Decided September
42, 1968. Rehearing denied November 8, 1968.

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 8 Am Jur 2d, Automobiles and Highway Traffic §§ 893, 979,
 987.
[3] 5 Am Jur 2d, Appeal and Error § 797.

Leave to appeal granted May 13, 1969.   382 Mich 752.

Complaint by Robert A. Winekoff, administrator of the estate of Rickey Lee Winekoff, deceased, against Mary E. Pospisil for the death of Rickey Lee Winekoff as the result of negligent operation of an automobile by defendant.   Verdict and judgment for defendant.   Plaintiff appeals.   Reversed and remanded.

*Jerry P. D'Avanzo,* for plaintiff.

*Ready & Braunlich,* for defendant.

CORKIN, J.   The defendant while driving home from work on a lightly traveled, dry, blacktopped, 2 lane rural road struck plaintiff's decedent, a 7-year-old child, who ran from a yard onto the highway in front of defendant's automobile.   Defendant's visibility of the yard was impaired by lilac bushes which bordered the yard on the side of defendant's approach.

The major issue on the trial of the case was whether or not defendant was negligent in the operation of her automobile.   The jury having returned a verdict of no cause of action, the plaintiff appeals on the sole ground that the court committed prejudicial error in admitting into evidence a pamphlet entitled "What Every Driver Must Know"[1] published by the Michigan Department of State which contained a table or chart showing stopping distances of passenger cars as various speeds as well as feet traveled per second, reaction

---

[1] This booklet contains a thumbnail sketch of motor vehicle laws, licensing requirements, meanings of road signs, and information respecting motor vehicle operation.   It is available to the public at police stations and secretary of state offices.

distances and braking distances. The pamphlet was offered in evidence by the defendant to substantiate the defense's contention that it was impossible for the defendant driver to avoid striking the child under the circumstances confronting her.

Before offering the pamphlet in evidence, defendant's counsel while questioning the defendant (referring to the chart) stated that the chart indicated that at a speed of 45 miles per hour one's reaction time would involve 50 feet of distance traveled. He also asked her if she understood that at 45 miles per hour she would travel 66 feet in a second, and that the stopping distance after a motor vehicle operator becomes aware of something that causes him to want to stop, if traveling at the rate of 45 miles per hour, is a minimum of 186 feet. In answering, the defendant indicated that she hadn't known this, but did now that counsel had told her. The chart was then offered in evidence, and over objection that no proper foundation for its admission had been made out, it was admitted.

During the colloquy between counsel and the court concerning the admissibility of the chart, the court said, "The jury is cautioned that the application to this case, well, depends, of course, upon the facts of this case as the jury finds them to be from the testimony."

The defense referred to the chart in closing argument and it was taken to the jury room when they retired to deliberate.

This would appear to be an initial attempt at appellate determination of whether this form of evidence is admissible in Michigan, although in at least two instances the Michigan Supreme Court has made use of Liddy's "Digital Safety Rule" and "What Every Driver Must Know" in formulating opinions not involving the admissibility of either publication. In *McGuire* v. *Rabaut* (1958), 354

Mich 230, these tables, along with statutory braking ability, CLS 1961, § 257.705[2] (Stat Ann 1960 Rev § 9.2405) were used to determine that as a matter of law, the favored driver's negligence in not looking was not a proximate cause of the collision because even had he looked diligently there was nothing he could have done, after discovery of the danger, to avoid collision. The facts in the case clearly indicated that the distance within which plaintiff could stop was substantially less than the statutory braking requirement. In *Noyce* v. *Ross* (1960), 360 Mich 668, the distances set forth in the secretary of state pamphlet were referred to in holding that as a matter of law there could be no negligence on the part of Ross. In both of the aforementioned cases, the stopping distances were substantially less than afforded by the standards set by the tables or charts, and these standards were used to reinforce reasoning sufficient to dispose of the situation presented to the court. This is no comment on the admissibility of the tables into evidence in a jury trial of a negligence action.

The position of the party seeking admission is that the chart or table represents a compilation of statistical evidences of experiences and as such, is admissible, as are standard mortality tables, market reports and almanacs.

The party opposing admissibility argues that the chart as admitted and used in this case amounted to hearsay evidence.

The manner of arriving at the figures set forth in the chart was not explained by either party, nor is there an explanation in the record. Whether the distances were compiled from the statutorily required distances, CLS 1961, § 257.705, as amended, (Stat Ann 1968 Rev § 9.2405), or whether they were

---

[2] Later amended by PA 1964, No 29 (Stat Ann 1968 Rev § 9.2405).

a matter of statistical interpolation of experiments on many vehicles, or some mathematical construction not appearing of record can't be ascertained from the record.

An annotation "Admissibility In Evidence, In Automobile Negligence Action of Charts Showing Braking Distance, Reaction Times, etc." is found in 9 ALR3d 976–80 following the reported case of *McDonald* v. *Mulvihill* (1964), 84 NJ Super 382, 202 A2d 213.

In *McDonald* the court held that while reaction and stopping distance charts published by the state division of motor vehicles should not be received in evidence as affirmative proof of the exact braking distance of a particular automobile being driven at a known speed, their admission did not constitute prejudicial error requiring reversal where (1) a statute requiring that a motor vehicle with four-wheel brakes be capable of stopping within 30 feet at a speed of 20 miles per hour was charged by the trial judge, (2) the charts were published by the division of motor vehicles and an inspector was being confronted with a publication of the very department by which he was employed to rebut his estimate of a stopping distance of 15 feet, and (3) the inspector testified, without objection, to the contents of the charts.

The annotation reviews 3 Wisconsin cases, *Steffes* v. *Farmers Mut. Auto. Ins. Co.* (1959), 7 Wis 2d 321 (96 NW2d 501), *Keplin* v. *Hardware Mut. Casualty Co.* (1964), 24 Wis 2d 319 (129 NW2d 321), and *Mainz* v. *Lund* (1963), 18 Wis 2d 633 (119 NW2d 334), and one Wyoming case, *Frazier* v. *Pokorny* (Wyo, 1960), 349 P2d 324, in which charts similar to those in the instant case were ruled admissible. However, it would appear that only in the *Mainz* case was the issue specifically presented and decided.

In *Steffes* the court found that the trial court's ruling that the chart was inadmissible was not prejudicial; in *Keplin* the issue was not actually raised; and in *Frazier* counsel had agreed on admission subject to objection of relevancy.

Also annotated were the following cases holding the charts inadmissible: *Thedorf* v. *Lipsey* (CA 7, 1956), 237 F2d 190, *Breshears* v. *Myers* (Mo, 1954), 266 SW2d 638, *Hughes* v. *Vestal* (1965) 264 NC 500 (142 SE2d 361), *Lemons* v. *Holland* (1955) 205 Or 163 (284 P2d 1041), and *Tuite* v. *Union Pacific Stages, Inc.* (1955) 204 Or 565 (284 P2d 333).

The courts which denied admission did so on the basis that the charts were hearsay evidence, or that the factors controlling braking time or stopping distances are so varied that it is impossible to reduce them to a series of set formulas. In general, the courts observed that because of the many factors involved in determining stopping and braking distances the charts would have slight, if any, value in a given case as affirmative proof of the exact braking distance of a particular automobile which is driven at a known speed. The courts also noted that the charts amounted to unsworn statements made by parties outside the presence of the court who were not submitted as witnesses and who could not be cross-examined.

In this case the chart was obviously offered in evidence as affirmative proof of stopping and braking distances without being related in any way to the situation in issue. As such it amounted to an *ex parte* statement based, presumably, on experiments conducted under conditions that might or might not be applicable or relevant to the case being tried. Generally, evidence of this nature is inadmissible, and we are not persuaded that the fact that it is in the form of a chart appearing in a

pamphlet published by the Michigan Department of State adds anything to its quality.

To be reversible error the admission of the evidence must be prejudicial, and while the transcript shows testimony that would support the verdict that was returned, the transcript also shows that the chart was alluded to several times during the trial, there was testimony based on it, and it was in the jury room as an exhibit during deliberations. It would be impossible to say with any degree of certainty that the admission of the chart in evidence did not affect the jury's verdict.

We must, therefore, reverse and remand.

QUINN, P. J., and T. G. KAVANAGH, J., concurred.