Joseph CHOMAN, a/k/a Joe Choman, Appellant (Plaintiff below),

v.

Judith Lynn EPPERLEY, Mary Ann Choman, Michael John Choman, and Julia R. Choman, Individually and as Executrix of the Estate of Mike Choman, Appellees (Defendants below).

No. 5026.

Supreme Court of Wyoming.

March 30, 1979.

Robert W. Koester, Sheridan, for appellant.

Jeffrey J. Gonda, of Lonabaugh & Vanderhoef, Sheridan, for appellees.

Before RAPER, C. J., and McCLINTOCK, THOMAS, ROSE and ROONEY, JJ.

ROONEY, Justice.

The sole issue in this case is whether the language in a quitclaim deed created a joint tenancy or a tenancy in common between the named remaindermen. The trial court entered summary judgment in favor of defendants, which held that the instrument created a tenancy in common, and denied a similar motion of plaintiff. Following the trial court's entry of a judgment dismissing the remaining claim in this dispute, we can now entertain proper jurisdiction over the merits of the plaintiff's appeal from the summary judgment.[1] We shall affirm.

1. On December 20, 1977 this court entered an order dismissing an earlier appeal of plaintiff because the trial court did not enter the summary judgment with a declaration that there

In the deed, grantor remised, released and forever quitclaimed right, title, interest, property, possession, claim and demand in a parcel of land in Sheridan "unto the said MARY CHOMAN, for her natural life, remainder to MIKE CHOMAN of Sheridan, Wyoming, and JOE CHOMAN of Hurst, Texas, their heirs and assigns forever." Mike Choman died testate November 14, 1976 before Mary Choman, who died May 28, 1977. Plaintiff, Joseph (Joe) Choman, filed this quiet title action against defendants, who were beneficiaries under Mike Choman's will,[2] contending that the conveyance from Mary Choman created a joint tenancy and that he, therefore, held the entire parcel by virtue of surviving Mike Choman.

The material facts in this matter are not in dispute. Plaintiff contends that the language of the deed created a joint tenancy (1) because the four unities of time, possession, title and interest were present and a joint tenancy *ipso facto* resulted—the four unities argument; (2) because the language created a joint tenancy at common law, and the common law as adopted by Wyoming has not been changed by statute—the common law argument; and (3) because the language in the conveyance is analogous to the language "husband and wife" approved by the court as creating a tenancy by the entirety—the analogy argument.

## THE FOUR UNITIES ARGUMENT

Plaintiff contends that if the four unities of time, possession, title and interest are present, a joint tenancy results from that fact alone.[3] This reasoning is faulty in the same manner as would be the reasoning that since wood is necessary to construct a wooden chair, all items constructed with wood are *ipso facto* chairs. Historically, the four unities have been a requirement for a joint tenancy, but not a definition of such. Tiffany, Real Property (Third Edition), Vol. 2, § 418, p. 196; Powell on Real Property, Vol. 4A, ¶ 615, p. 663; 20 Am.Jur.2d, Cotenancy and Joint Ownership, § 4, p. 96.

Plaintiff relies on the following language in *Wambeke v. Hopkin*, Wyo., 372 P.2d 470, 475–476 (1962), to support his contention:

" * * * In order to create in Wyoming a joint tenancy or tenancy by the entirety, in personal property, there must exist *one* of the following *minimum* requirements:

"1. Each of the four unities of interest, time, title, and possession must be present, with the added unity of person for a tenancy by the entirety; or

"2. *In the absence of one or more of the first four unities,* it must be evident from the language of the instrument itself that the parties thereto intended to create a right of survivorship." (Emphasis supplied.)

This language *not only fails to* support plaintiff's argument, it refutes it. If the four unities are a "minimum" requirement for a joint tenancy, they can not be the sole mark of such. The second alternative recognizes the existence of a joint tenancy without the four unities if the intention to create such is evident. And the second alternative *is an alternative.* It provides that a joint tenancy can be created without the four unities. The presence of the four unities, therefore, does not *ipso facto* create the joint tenancy. They may

was no just reason for delay and an express determination for the entry of judgment as required by Rule 54(b), W.R.C.P. Plaintiff then filed separate motions, which effectively requested the trial court to either make the requisite determination and certificate or dismiss the second count of the complaint without prejudice. The court entered a judgment on June 12, 1978, which dismissed count two without prejudice and decreed that the previous summary judgment on count one was a final judgment. It is from this judgment that the appeal is being prosecuted, and, as the case is now postured, the summary judgment constitutes a final disposition of the controversy.

2. One of the defendants was also executrix under the will and was named defendant in both capacities.

3. Appellees dispute the presence of all of the four unities, but our finding makes unnecessary the consideration of this contention.

also be present when a tenancy in common is created *if the intention to do so is manifest.* Manifested intention as the principal determining factor in distinguishing between the creation of a joint tenancy or of a tenancy in common has been recognized in *Nussbacher v. Manderfeld,* 64 Wyo. 55, 186 P.2d 548 (1947); *Hundley v. Neely,* Wyo., 365 P.2d 196 (1961); *Hartt v. Brimmer,* 74 Wyo. 338, 287 P.2d 638 (1955); *Wambeke v. Hopkin,* supra; *Witzel v. Witzel,* Wyo., 386 P.2d 103 (1963); *Fehling v. Cantonwine,* D.C.Wyo., 379 F.Supp. 1250 (1974) affirmed 10th Cir. 1975, 522 F.2d 604; and *National Bank of Newcastle v. Wartell,* Wyo., 580 P.2d 1142 (1978). Other states have made like determinations. See *In Re Baker's Estate,* 247 Iowa 1380, 78 N.W.2d 863 (1956); *In Re Hutchison's Estate,* 120 Ohio St. 542, 166 N.E. 687 (1929); 48 C.J.S. Joint Tenancy § 3d, p. 917; 20 Am.Jur.2d, Cotenancy and Joint Ownership, § 4, p. 97.

### THE COMMON LAW ARGUMENT

Plaintiff contends that, where the intention is not manifest, as here, and a conveyance is made to two people, the presumption in Wyoming is that a joint tenancy is created. This, because such a presumption existed at common law, and Wyoming adopted the common law and has not changed the same by statute.

 The adoption of common law by Wyoming was not an adoption of a set code of law. By nature, the common law is not a set code of law. Nor was the adoption one of static and nonchanging law.[4] The statute (§ 8–1–101, W.S.1977) by which such adoption was made reads:

4. " * * * It is one of the great merits and advantages of the common law, that, instead of a series of detailed practical rules, established by positive provisions, and adapted to the precise circumstances of particular cases, which would become obsolete and fail, when the practice and course of business, to which they apply, should cease or change, the common law consists of a few broad and comprehensive principles, founded on reason, natural justice, and enlightened public policy, modified and adapted to the circumstances of all the particular cases which fall within it. These general principles of equity and policy are rendered precise, specific, and adapted to practical use, by usage, which is the proof of their general

"The common law of England *as modified by judicial decisions,* so far as the same is of a general nature and not inapplicable, and all declaratory or remedial acts or statutes made in aid of, or to supply the defects of the common law prior to the fourth year of James the First (excepting the second section of the sixth chapter of forty-third Elizabeth, the eighth chapter of thirteenth Elizabeth and ninth chapter of thirty-seventh Henry Eighth) and which are of a general nature and not local to England, are the rule of decision in this state when not inconsistent with the laws thereof, and are considered as of full force until repealed by legislative authority." (Emphasis supplied.)

With reference to the emphasized portion of this statute, we have said that:

" * * * we must decide this case in accordance with the decisions subsequent to the time of James I, in so far as not inconsistent with the laws of this state, and the decisions which must govern us, to the extent mentioned, are not only the English decisions * * * , but other decisions as well, comparatively recent though they may be, and we are at liberty to follow any of them, or rest our decision upon the fundamental principle underlying all of them. * * * " *Johnston v. Laird,* 48 Wyo. 532, 538, 52 P.2d 1219, 1220 (1935).

And again:

" * * * The common law is not exactly the common law of 1607. Many, and probably most of the rules of the common law of 1607, aside from equitable rules

fitness and common convenience, but still more by judicial exposition * * *. [The effect] of this expansive character of the common law is, that when new practices spring up, new combinations of facts arise, and cases are presented for which there is no precedent in judicial decision, they must be governed by the general principle, applicable to cases most nearly analogous, but modified and adapted to new circumstances, by considerations of fitness and propriety, of reason and justice, which grow out of the circumstances. * * * " Chief Justice Lemuel Shaw (Mass.), *Norway Plains Company v. Boston and Maine Railroad,* 1 Gray's Rep. 263, 267, 268 (Mass.1854).

and aside from fundamental maxims, have been modified by judicial decisions. * * * However, it' is, and has been, the constant practice of courts in common law jurisdictions to freely cite cases from other common-law courts, and we take it that the legislature had in mind the judicial decisions of all the various jurisdictions. The cases may differ; one court may take one view, another another. Hence we cannot consider these various decisions as the law in this state, but as interpretations of the common law, and we are at liberty to adopt that interpretation which seems to be the best." *In Re Smith's Estate*, 55 Wyo. 181, 192–193, 97 P.2d 677, 681 (1940). See *Krug v. Reissig*, Wyo., 488 P.2d 150 (1971).

With the foregoing in mind, the change in Wyoming of the common law presumption favoring joint tenancies to a contrary presumption can be demonstrated.

In the first instance, the exact status of the common law relative to this presumption as of the fourth year of James I (1607) can be questioned. Reference is usually made to Sir William Blackstone's Commentaries of the Laws of England to support the existence of the presumption in favor of joint tenancies. 1 Cooley's Blackstone, 4th Ed., Bk. II, Ch. 12, p. 581; 1 Chitty's Blackstone, Commentaries on the Laws of England, Bk. II, Ch. 12, p. 145, and see footnote 4 therein. Blackstone's Commentaries on the Laws of England was first published in 1765 and was based on lectures given by him in the 1750s and 1760s.

But in *Hawes* and *Hawes*, 95 Eng.Rep. 552 (1747), Lord Hardwicke said:

"It is true that, in this Court, jointenancies are not favoured, because they are a kind of estates that do not make provision for posterity; neither do I take it that Courts of Law do at this day favour them; although Lord Coke says, that jointenancy is favoured because the law is against the division of tenures, but as tenures are many of them taken away, and in a great measure abolished, that reason ceases, and Courts of Law incline the same way with this Court. * * * * "

Since the reason for the presumption in favor of joint tenancies was the existence of tenures, the reason ceased to exist a century or two before 1607.[5] Therefore, the existence of the presumption in common law in 1607 without a basis of reason is questionable.

In the second instance, the presumption in favor of joint tenancies has been abolished in England and in most states. 20 Am.Jur.2d, Cotenancy and Joint Ownership, § 11, p. 102; 48 C.J.S. Joint Tenancy § 3d, p. 917. Although this has been usually accomplished by statute, it has also been done by court ruling. *Sergeant v. Steinberger*, 2 Ohio Rep. 305 (1826); and *Houghton v. Brantingham*, 86 Conn. 630, 86 A. 664 (1913). Although Wyoming has not, by statute, directly reversed the one time common law presumption favoring joint tenancies,[6] reference to the following cases reflect that the common law has been "modi-

---

**5.** The medieval epoch in English history is generally said to end in 1485 with the beginning of the reign of Henry VII. Of course, many medieval institutions and conceptions ceased before 1485 and some continued for a period thereafter. The statutes of laborers (1351) was an attempt to maintain the economic basis for tenures. Its failure resulted in the peasants' revolt of 1381. Maintenance and livery vanished during the reign of Henry VII, the guilds became powerless, and the agrarian revolution with the practice of enclosures took place. The "Modern Era" was marked by the Reformation and Renaissance. By the end of the Tudor reign (Queen Elizabeth's reign ended in 1603), the incident of common law tenure based on providing of feudal services through descent was eliminated far beyond that directed by the

Statute Quia Emptores (Stat. Westminister III, 18 Edw. I, c. 1), which was enacted in 1290, and which abolished sub-infeudation in case of a conveyance in fee simple, and such incident was nonexistent for all practical purposes.

**6.** The common law relative to the presumption has been modified by statute in Wyoming. See §§ 13–3–601, 13–7–302, 34–21–310, 34–21–316, and 34–21–401 to 34–21–493, W.S.1977, re commercial paper joint instruments and re bank and savings and loan joint accounts, deposits, and collections. See § 34–1–140, W.S. 1977, re creation of joint tenancies or tenancy by the entirety by conveyance of owner to himself and another or others without use of "strawman."

fied by judicial decisions" to accomplish such reversal.

In *Nussbacher v. Manderfeld*, supra, *Hundley v. Neely*, supra, *National Bank of Newcastle v. Wartell*, supra, and *Witzel v. Witzel*, supra, we held that the language of the creating instrument clearly expressed an intention to create a joint tenancy or tenancy by the entirety. But we did so only after discussing the importance of such express intention rather than simply relying on the creation of such by virtue of the one time common law presumption favoring joint tenancies. The corollary is that without such express intention, a tenancy in common was presumed. Professor Powell refers to the 1947 *Nussbacher v. Manderfeld* case in his discussion on the one time common law presumption favoring joint tenancies with the comment "[i]n * * * Wyoming, the substantial reduction in the possibility of joint tenancies was accomplished by the courts without statutory aid." Powell on Real Property, Vol. 4A, ¶ 602, p. 601.

In *Roy E. Hays & Co. v. Pierson*, 32 Wyo. 416, 234 P. 494 (1925) the estate created by a deed of land to a partnership was held to be that of tenancy in common. The court said at p. 497 of 234 P.:

" * * * If land is deeded to one member of a partnership or to the several members without any statement in the deed that such grantee or grantees hold the lands as the property of the firm, the law presumes that the ownership is in the individual grantee or grantees. *30 Cyc. 435.* And the presumption accordingly arising from the deed aforesaid is that the lands were intended to be held by Primm and Lawrence as tenants in common and not as partnership property. * * * "

In *Hartt v. Brimmer*, supra, a lease of a safety deposit box "as joint tenants with right of survivorship and not as tenants in common" was held to not create a joint ownership of the contents, and that to do so the fact of joint ownership of the contents would have to be expressly stated.

In *Wambeke v. Hopkin*, supra, a promissory note payable to Leo N. Hopkin and Eileen Hopkin was held to create a tenancy in common in the note. As previously indicated, two minimum alternative requirements for a joint tenancy were set forth. One of the four unities was missing and, thus, the first minimum alternative for a joint tenancy did not exist. An intention to create a right of survivorship was not manifested, and therefore the second alternative did not exist. If the one time common law presumption prevailed in Wyoming, the joint tenancy would have resulted without evidence thereof in the language of the instrument. The corollary is that, without the express provision for a joint tenancy, a tenancy in common is presumed.

In *Witzel v. Witzel*, supra, the conveyance was to Albert W. Witzel and Ethel K. Witzel, husband and wife, as joint tenants, not as tenants in common. The basic issue was whether or not a tenancy by the entirety was created (which would revert to a tenancy in common on divorce) rather than a joint tenancy. A joint tenancy was held to have been created inasmuch as the expressed intention was to that effect. Again, if a joint tenancy were presumed, as was done under the one time common law, the long discourse in the case relative to giving effect to the expressed intent would have been unnecessary.

Plaintiff cited language from both of these last two cases, *Wambeke v. Hopkin*, supra, and *Witzel v. Witzel*, supra, to support his contention that Wyoming has not abrogated or modified common law joint tenancy. Any language to that effect in these cases could be said to refer to *statutory* abrogation or modification; and, in any event, such language is not in harmony with the result of either opinion.

In *Fehling v. Cantonwine*, supra, the issue was whether or not notes payable to Frank Fehling and Winniebell Fehling created a joint tenancy or a tenancy by the entireties. The U. S. District Court noted that in a diversity action it would sit "as a Wyoming state court and shall therefore attempt to follow what the law may be in

Wyoming", 379 F.Supp. at 1253. It made reference to *Wambeke v. Hopkin,* supra, and found the conveyance to create a tenancy in common. The court said "[a]s a corollary it is noted that joint tenancies are not favored and such will not be implied or presumed", 379 F.Supp. at 1253. In affirming, the three-judge circuit court panel, Judges Murrah, Hill and Doyle, speaking through Judge Hill said:

> "No right of survivorship is stated on the notes in issue and, although the payees are husband and wife, this is not indicated on the notes. Since nothing appears in the instruments evidencing, or which could be construed as evidencing, an intention to create a survivorship, we must find that appellant and her husband held the notes as tenants in common. * * * " 522 F.2d at 606.

Finally, if the one time common law presumption favoring joint tenancies over tenancies in common has not been finally reversed by previous Wyoming case law, the fact that the purpose for the presumption no longer exists, and the fact that "[t]he joint estate is not favored in this country; the policy of the American law is opposed to the creation of a joint tenancy with the entire property going to the survivor, at least unless the parties clearly demonstrate that that is the intent,"[7] dictates that we do so[8] pursuant to the authorization contained in § 8–1–101, and in accordance with the following purposes previously enunciated by this court:

---

**7.** 20 Am.Jur.2d, Cotenancy and Joint Tenancy, § 11, p. 102.

" * * * '[I]n adopting the Common Law, * * * it must be * * * applicable to the habits and condition of our society, and in harmony with the genius, spirit and objects of our institutions.' * * * " *Fuchs v. Goe,* 62 Wyo. 134, 161, 163 P.2d 783, 792 (1945).

" * * * Mindful as we are, that we are not here to legislate, but to declare the law, still we are not, we think, called upon to help in perpetuating that error. If the case was at one time a part of the common law of England, it has been so 'modified by judicial decisions,' as not to be a part of the common law of this state * * * ." *Investors' Guaranty Corporation v. Thompson,* 31 Wyo. 264, 283, 225 P. 590, 596 (1924).

See also *Oroz v. Board of County Commissioners of Carbon County,* Wyo., 575 P.2d 1155 (1978).

In view of the foregoing, it will not be necessary to consider plaintiff's analogy argument.

The summary judgment of the trial court in favor of defendants and against plaintiff is affirmed.

---

**8.** See 48 C.J.S. Joint Tenancy § 3d, p. 917; Powell on Real Property, § 602, p. 600; Smith and Boyer, Survey of the Law of Property (Second Edition 1971), p. 56.