Billy W. McCLELLAN, Individually and as Administrator of the Estate of Chad W. McClellan, Deceased, and State Farm Mutual Automobile Insurance Company, Appellants (Plaintiffs),

v.

Mary Jane TOTTENHOFF, Individually and Doing Business as Tody's Liquors and Michael "Mike" Buffington, Appellees (Defendants).

No. 5830.

Supreme Court of Wyoming.

June 28, 1983.

Rehearing Denied July 19, 1983.

Donald J. Sullivan, Cheyenne, for appellants.

Richard C. Hopkins of Guy, Williams, White & Argeris, and John B. Rogers, Cheyenne, for appellees.

Before ROONEY, C.J., and RAPER,* THOMAS, ROSE and BROWN, JJ.

* Retired June 13, 1983, but continued to participate in the decision of the court in this case

BROWN, Justice.

Appellant Billy W. McClellan, individually and as administrator of the estate of Chad W. McClellan, and appellant State Farm Mutual Automobile Insurance Company sued appellee Mary Jane Tottenhoff, individually and doing business as Tody's Liquors, and appellee Michael Buffington, an employee. The complaint alleged that appellees had negligently sold liquor to a minor at a drive-in area, that the minor became intoxicated and killed Chad W. McClellan in an automobile accident, and that the sale of the liquor was a proximate cause of the accident. The district court granted an order dismissing the complaint for failure to state a claim. The court had no choice but to dismiss, based on our holding in *Parsons v. Jow,* Wyo., 480 P.2d 396 (1971). The sole issue on appeal is whether a complaint against a vendor unlawfully selling liquor to a minor who becomes intoxicated and injures a third party states a claim for relief in Wyoming.

We reverse.

Under the traditional common law a cause of action against a liquor vendor for injuries to a third person by a consumer of alcohol was unknown. The basis for refusing to impose liability usually rested on the theory that it was the drinking of liquor, not the sale, which was the proximate cause of the injury. "[T]here may be sales without intoxication, but no intoxication without drinking." *Collier v. Stamatis,* 63 Ariz. 285, 290, 162 P.2d 125, 127 (1945). The earliest case which we found stating the common law rule was *King v. Henkie,* 80 Ala. 505, 60 Am.Rep. 119 (1886). The case dealt with the death of the consumer, but the same rationale applied to a third party. If an injury to the consumer was too remote, injury to a third person was assuredly so.

" * * * [T]here must be some proximate connection between the wrong done and the damage claimed to result from it, that the two must be sufficiently conjoined so as to be 'concatenated as cause

pursuant to order of the court entered June 13, 1983.

and effect,' as often said. Had it not been for the drinking of the liquor, after the sale, which was a secondary or intervening cause co-operating to produce the fatal result, and was the act of deceased, not of defendants, the sale itself would have proved entirely harmless. Hence it cannot be said that the wrongful act of the defendants, in making sale of the liquor, caused the death of King; but rather his own act in drinking it. * * * " *King v. Henkie,* supra at 122.

This court has cursorily ruled that a third party injured by a consumer of liquor has no cause of action against a liquor vendor because there is no proximate cause. *Parsons v. Jow,* supra at 397.

"We think it cannot be denied there was no cause of action at common law against a vendor of liquor in favor of one injured by a vendee who becomes intoxicated— this for the reason that the proximate cause of the injury was deemed to be the patron's consumption of liquor and not its sale. * * * "

We also said in *Parsons v. Jow,* supra, at 397–398:

"The legislature of Wyoming has not seen fit to change the common law rule as it applies in this case. Whether legislation in the nature of a dramshop act or civil damage statute should be included as a part of our liquor control code is within the province of the legislature." [1]

Section 12–5–502, W.S.1977, does provide a claim for relief against a liquor vendor in favor of a limited group of injured third parties. Basically, it allows recovery for loss of support to a dependent when a licensed vendor sells alcohol, after a written notice from a dependent or spouse, to an habitual drunkard who is neglecting to provide support. It also allows parents or guardians to recover against a licensed vendor who sells to a child or ward after written notice.

We hereby overrule *Parsons v. Jow,* supra. We think the statements from that case concerning the province of the legislature and proximate cause misconstrue the nature of common law. As pointed out in *Choman v. Epperley,* Wyo., 592 P.2d 714 (1979), Wyoming's adoption of the common law under § 8–1–101, W.S.1977, was not an adoption of a set code of law.[2]

" ' * * * The common law of England, *as modified by judicial decisions,* so far as the same is of a general nature and not inapplicable * * * are the rule of decision in this state when not inconsistent with the laws thereof, and are considered as of full force until repealed by legislative authority.' " *Choman v. Epperley,* supra, at 716.

We further said in *Choman v. Epperley,* supra, that we must decide cases in accordance with decisions subsequent to the times of James I, but that we are at liberty to follow comparatively recent decisions, or to base our decision on a fundamental principle underlying all the other decisions.

This court said much the same thing in *Collins v. Memorial Hospital of Sheridan*

---

1. Dramshop: Archaic usage for barroom. Webster's Third New International Dictionary (G. & C. Merriam Company (1966)). A typical dramshop act or civil damage act imposes liability on liquor vendors in certain situations. See § 30–102, Connecticut General Statutes, Revision of 1958, Revised to 1981, which imposes limited liability on a seller who sells to an intoxicated person who injures another. Section 6–5–71, Code of Alabama, 1977, provides a right of action for every person injured by an intoxicated person "against any person who shall, by selling, giving, or otherwise disposing of to another, contrary to the provisions of law, any liquors or beverages, cause the intoxication of such person for all damages actually sustained, plus exemplary damages."

2. Section 8–1–101, W.S.1977:

"The common law of England as modified by judicial decisions, so far as the same is of a general nature and not inapplicable, and all declaratory or remedial acts or statutes made in aid of, or to supply the defects of the common law prior to the fourth year of James the First (excepting the second section of the sixth chapter of forty-third Elizabeth, the eighth chapter of thirteenth Elizabeth and ninth chapter of thirty-seventh Henry Eighth) and which are of a general nature and not local to England, are the rule of decision in this state when not inconsistent with the laws thereof, and are considered as of full force until repealed by legislative authority."

*County*, Wyo., 521 P.2d 1339, 1341 (1974), when it abolished municipal immunity to the extent that the municipal entity was covered by insurance.

> "The writer has oft been at odds with the theory that when the courts help create an 'Aegean stable' the legislature has the sole responsibility for cleaning up the mess * * *. The writer freely concedes the importance, necessity, and strength of the doctrine of stare decisis * * * but is unable to utilize this doctrine as a justification for the continuance of an unfair and improper rule which operates to the detriment of those who may suffer tortious injury * * *."

■ The rule that there is no cause of action when a vendor sells liquor to a consumer who injures a third party was created by the courts. We see no reason to wait any longer for the legislature to abrogate it. Common law created by the judiciary can be abrogated by the judiciary. As an Arizona appellate court said, the common law " * * * is not a thing of chiseled marble to be left unchanged for centuries." *Lewis v. Wolf,* 122 Ariz.App. 567, 596 P.2d 705, 706 (1979), quoting Mr. Justice Douglas:

> " 'Inherent in the common law is a dynamic principle which allows it to grow and to tailor itself to meet changing needs within the doctrine of stare decisis, which, if correctly understood, was not static and did not forever prevent the courts from reversing themselves or from applying principles of common law to new situations as the need arose. If this were not so, we must succumb to a rule that a judge should let others "long dead and unaware of the problems of the age in which he lives, do his thinking for him." * * * ' " [3]

Courts which base their finding of a cause of action against a liquor vendor using the common law of negligence state that a liquor vendor owes the same duty to the whole world as does any other person. See *Alegria v. Payonk,* 101 Idaho 617, 619

P.2d 135 (1980); and *Rappaport v. Nichols,* 31 N.J. 188, 156 A.2d 1, 75 A.L.R.2d 821 (1959). Once the general duty to use reasonable care is acknowledged, then courts focus their attention on the foreseeability of the resulting harm to establish proximate cause. We think this is a sensible and just approach. Henceforth, cases involving vendors of liquor and injured third parties will be approached in the same manner as other negligence cases.

■ Negligence consists of a duty on the part of the defendant and a violation of the duty which proximately causes injury to the plaintiff. *ABC Builders, Inc. v. Phillips,* Wyo., 632 P.2d 925 (1981). The question whether a duty exists is one of law. *Dubus v. Dresser Industries,* Wyo., 649 P.2d 198 (1982). The Wyoming common law of negligence imposes a duty on the defendants to exercise the degree of care required of a reasonable person in light of all the circumstances. *Ruhs v. Pacific Power & Light,* 671 F.2d 1268 (10th Cir.1982).

Illinois, Idaho, Indiana, Minnesota, New Jersey, and Oregon recognize a common law negligence cause of action against a liquor vendor, although some of them do so in a circuitous way. Some of these cases concerned the sale of alcohol to already intoxicated persons, but the same rationale would apply to sales to minors.

In *Colligan v. Cousar,* 38 Ill.App.2d 392, 187 N.E.2d 292 (1963), the Illinois court applied the common law of Indiana. It ruled that the Illinois dramshop act provided the sole remedy to someone injured in Illinois, but that the act did not give rise to a cause of action when the intoxication occurred in Illinois and the resulting accident occurred in another state. It went on to say that the negligence count could be interpreted as stating a cause of action in tort based either on a duty imposed on the defendants by the liquor control act or on a duty imposed on every person not to do an act, the consequences of which were known to him or could reasonably be anticipated,

---

**3.** The Arizona intermediate appellate court was highly critical of the old rule that no cause of action existed but was constrained to follow the decisions of the Arizona Supreme Court. We suffer no such constraints.

and which resulted in harm to another. The court held that had there been no dramshop act in Illinois, there would be a common law cause of action, either because of violation of a statute or because of violation of a common law duty. The court then decided that, since the question had never been ruled upon in Indiana, it would presume that the common law of Indiana was the same as in Illinois. It ruled that there was a common law cause of action in Illinois, and that, as far as it was concerned, there was also one in Indiana.

The Indiana court in *Elder v. Fisher,* 247 Ind. 598, 217 N.E.2d 847 (1966), noted that it was not bound by the Illinois decision in *Colligan v. Cousar,* supra. It decided that a statute created a duty, but it went on to say that in the absence of special statutory provision, the general principles of common law negligence should be applied to cases involving intoxicating liquor.[4]

In *Trail v. Christian,* 298 Minn. 101, 213 N.W.2d 618 (1973), the Minnesota court held that a common law negligence action would· lie against a commercial vendor who illegally furnished 3.2 beer, since that situation was not covered by the civil damage act. In *Fitzer v. Bloom,* Minn., 253 N.W.2d 395 (1977), the court reiterated that a common law cause of action for negligence would be allowed where the civil damage act did not apply.

A well-known case which set out this common law duty is *Rappaport v. Nichols,* supra. That case acknowledged a common law cause of action based on whether a reasonably prudent person at the time and place should recognize and foresee an unreasonable risk or likelihood of harm or danger to others. It also acknowledged a duty based on a statute forbidding the sale of alcohol to minors or intoxicated persons.

The Oregon court has also explicitly recognized a cause of action based on general negligence principles. In *Campbell v. Carpenter,* 279 Or. 237, 566 P.2d 893, 97 A.L. R.3d 522 (1977), the court approved the ruling of *Rappaport v. Nichols,* supra, and

made it clear in a footnote that it was basing liability not on a statute, but on common law negligence.

In *Alegria v. Payonk,* supra, the court said it is generally held:

"'* * * One owes the duty to every person in our society to use reasonable care to avoid injury to the other person in any situation in which it could be reasonably anticipated or foreseen that a failure to use such care might result in such injury.' *Kirby v. Sonville,* 286 Or. 339, 594 P.2d 818, 821 (1979). * * *"

The court said it perceived no justification for excusing the licensed vendor of intoxicants from the general duty which each person owes all others in our society. The vendors sold alcohol to a person whom they knew or should have known was a minor and whom they knew or should have known was intoxicated. The question was whether the conduct of the vendors in so doing fell below that of a person of ordinary prudence acting under the same circumstances and conditions. The court held that under the common law rule and· under statute the vending of intoxicants could be the proximate cause of damage to third parties resulting from the tortious or unlawful acts of the consumer.

■ We agree with the reasoning of the cases acknowledging a cause of action based on common law negligence. We hold that a vendor of liquor owes a duty to exercise the degree of care required of a reasonable person in light of all the circumstances.

■ The duty of exercising care to protect another person may either exist at common law or be imposed by statute. *Culver v. Sekulich,* 80 Wyo. 437, 344 P.2d 146 (1959). The pertinent statutes in this case are §§ 12–5–301(a)(v) and 12–6–101(a), W.S.1977. Section 12–5–301(a)(v) provides:

"(a) Upon approval of the licensing authority, a drive-in area adjacent or contiguous to the licensed room may be used by the holder of a retail liquor license for taking orders, making delivery of and

---

4. This particular case involved an injury to a consumer, but the language of the case did not differentiate between an injury to the consumer and an injury to a third person.

receiving payment for alcoholic liquor or malt beverages under the following conditions:

\*     \*     \*     \*     \*     \*

"(v) No order shall be received from nor delivery made to a minor or intoxicated person in the area."

Section 12–6–101(a) provides:

"(a) Every person who sells, furnishes, gives or causes to be sold, furnished or given away any alcoholic liquor or malt beverage to any person under the age of nineteen (19), who is not his legal ward, medical patient or member of his own immediate family, is guilty of a misdemeanor."

■ Appellee argues that these statutes were meant only to protect minors. We disagree. At least fourteen jurisdictions have established a duty toward the general public based on similar statutes. See *Marusa v. District of Columbia,* 157 App.D.C. 348, 484 F.2d 828 (D.C.Cir.1973); *Alesna v. Le Grue,* Alaska, 614 P.2d 1387 (1980); *Ono v. Applegate,* 62 Hawaii 131, 612 P.2d 533 (1980); *Elder v. Fisher,* supra; *Lewis v. State,* Iowa, 256 N.W.2d 181 (1977); *Pike v. George,* Ky., 434 S.W.2d 626 (1968); *Adamian v. Three Sons, Inc.,* 353 Mass. 498, 233 N.E.2d 18 (1968); *Trail v. Christian,* supra; *Munford v. Peterson,* Miss., 368 So.2d 213 (1979); *Rappaport v. Nichols,* supra; *Lopez v. Maez,* 98 N.M. 625, 651 P.2d 1269 (1982); *Mason v. Roberts,* 33 Ohio St.2d 29, 62 Op.2d 346, 294 N.E.2d 884 (1973); *Walz v. City of Hudson,* S.D., 327 N.W.2d 120 (1982); *Callan v. O'Neil,* 20 Wash.App. 32, 578 P.2d 890 (1978).

As we have previously noted, some of these cases have ruled concerning a statute forbidding the sale of alcohol to intoxicated persons. We see no difference whether the statutes forbid sales to intoxicated persons or to minors. The idea behind both statutes is that these people are more likely to be unable to handle alcohol, that they need protection from themselves, and that society needs protection from them.

As the court in *Rappaport v. Nichols,* supra, reasoned:

" \* \* \* It seems clear to us that these broadly expressed restrictions were not narrowly intended to benefit the minors and intoxicated persons alone but were wisely intended for the protection of members of the general public as well. See *State v. Dahnke,* 244 Iowa 599, 603, 57 N.W.2d 553, 556 (Sup.Ct.1953); *Waynick v. Chicago's Last Department Store,* supra, 269 F.2d 322 at page 325 \* \* \*." Id., 156 A.2d at 8.

We hold that both § 12–5–301(a)(v), supra, and § 12–6–101(a), supra, establish a duty toward the general public. The next question becomes whether the statutes establish the standard of conduct of a reasonable person, so that their violation is negligence per se, or whether it is instead evidence of negligence. We said in *Distad v. Cubin,* Wyo., 633 P.2d 167 (1981), that the court may adopt the requirements of a legislative enactment as the standard of conduct of a reasonable man. We also said in Distad that the establishment of negligence per se from the violation of a statute is not always appropriate.

" \* \* \* 'The enactment or regulation may, however, provide only for criminal liability, and not for civil liability \* \* \*. In such cases the initial question is whether the legislation or regulation is to be given any effect in a civil suit. Since the legislation has not so provided, the court is under no compulsion to accept it as defining any standard of conduct for purposes of a tort action.' Id., at 176–177.

\*     \*     \*     \*     \*     \*

" ' \* \* \* The decision to adopt the standard is purely a judicial one, for the court to make. When the court does adopt the legislative standard, it is acting to further the general purpose which it finds in the legislation, and not because it is in any way required to do so.' " Id., at 177.

■ We hold that the violation of either § 12–5–301(a)(v) or § 12–6–101(a), supra, is evidence of negligence and may be considered by the trier of fact together with other circumstances in determining the issue of negligence.

We have now established a duty based both upon the common law and upon statutes. The question of proximate cause must also be addressed. Proximate cause means that the accident or injury must be the natural and probable consequence of the act of negligence. *Frazier v. Pokorny,* Wyo., 349 P.2d 324 (1960). In determining what constitutes proximate cause, the same principles apply whether the negligence is a violation of a statutory duty or a nonstatutory duty. *Zanetti Bus Lines, Inc. v. Hurd,* 320 F.2d 123 (10th Cir.1963). The question whether proximate cause exists is one for the trier of fact, unless the evidence shows that reasonable persons could not disagree. *Kopriva v. Union Pacific Railroad Company,* Wyo., 592 P.2d 711 (1979); *Endresen v. Allen,* Wyo., 574 P.2d 1219 (1978); *Caillier v. City of Newcastle,* Wyo., 423 P.2d 653 (1967).

" ' * * * Negligence must be determined upon the facts as they appeared at the time, and not by a judgment from actual consequences which were not then to be apprehended by a prudent and competent man. *What was reasonably to be foreseen is generally a question for the jury.*' " *Endresen v. Allen,* supra at 1222.

We hold that the ultimate test concerning proximate cause will be whether the vendor could foresee injury to a third person. This question will be one of fact based on the circumstances of each particular case. It is, however, not necessary that a specific injury be foreseen.

" * * * It is sufficient if a reasonably prudent person would foresee that injury of the same general type would be likely to happen in the absence of such safeguards. [Citations.]" *Connett v. Fremont County School District No. 6,* Wyo., 581 P.2d 1097 (1978).

The argument is also made that even if the sale of alcohol does eventually result in injury to a third person, the injury which the consumer of alcohol brings about is an independent intervening cause. An intervening cause is one which occurs after a defendant's negligent act or omission. A defendant is usually relieved of liability by an unforeseeable intervening cause. *Fagan v. Summers,* Wyo., 498 P.2d 1227 (1972). However, an intervening cause does not relieve an earlier actor of liability if it was reasonably foreseeable. *d'Hedouville v. Pioneer Hotel Company,* 552 F.2d 886 (9th Cir.1977). The causal connection is not broken where the original wrongdoer could reasonably have foreseen that injury to another would be a probable consequence of his negligence. *Tyler v. Jensen,* 75 Wyo. 249, 295 P.2d 742 (1956). We agree with the reasoning in *Rappaport v. Nichols,* supra, 156 A.2d at 9:

"* * * [A] tortfeasor is generally held answerable for the injuries which result in the ordinary course of events from his negligence and it is generally sufficient if his negligent conduct was a substantial factor in bringing about the injuries. [Citations.] The fact that there were also intervening causes which were foreseeable or were normal incidents of the risk created would not relieve the tortfeasor of liability. [Citations.] Ordinarily these questions of proximate and intervening cause are left to the jury for its factual determination. * * * "

When considering a motion to dismiss a complaint on the ground that it fails to state a claim upon which relief can be granted, the facts alleged in the complaint are admitted and the allegations must be viewed in the light most favorable to plaintiff. *Moxley v. Laramie Builders, Inc.,* Wyo., 600 P.2d 733 (1979). The complaint here alleges that James Staatz was seventeen; that he purchased liquor at a drive-in window; that he was in his car; that he looked young; and that appellee made no effort to check the boy's identification. We are in no position to hold as a matter of law that any intervening cause could not be foreseeable or that there could have been no proximate causal connection between appellee's unlawful conduct and the plaintiff decedent's injuries.

"When alcoholic beverages are sold by a tavern keeper to a minor or to an intoxicated person, the unreasonable risk of harm not only to the minor or the intoxi-

cated person but also to members of the traveling public may readily be recognized and foreseen; this is particularly evident in current times when traveling by car to and from the tavern is so common-place and accidents resulting from drinking are so frequent. [Citations.] * * * " *Rappaport v. Nichols,* supra, 156 A.2d at 8.

The fact that the risk to the traveling public may readily be recognized and foreseen is supported by disturbing statistics. In 1977, the year when the statute forbidding sale of alcohol to minors and the statute forbidding sale of alcohol at a drive-in to minors or to intoxicated persons were recodified, there were 212 fatal vehicular accidents in Wyoming; 119, or over fifty percent, involved alcohol as a contributing circumstance. Of the 144 drivers involved where alcohol was a contributing factor, 34 were under the age of 21. Nearly one-fourth of the drivers involved in fatal accidents where alcohol was a contributing factor, then, were under 21 years old. (Wyoming's Fatal Accident Facts, Wyoming State Highway Department, p. 32, 1977).

Refusing to acknowledge a claim for relief against a liquor vendor harms society in two ways. First, it is an unjust doctrine which often limits recovery when an intoxicated minor driver injures someone. Businesses which sell liquor are usually in a more solid financial position than a minor. Second, it is reasonable to assume that the current state of the law places us all at more peril, because there is no effective deterrent to keep liquor vendors from selling liquor to minors or to intoxicated persons. Liquor licenses are seldom revoked. Perhaps the threat of civil liability or increased insurance premiums will serve to make liquor vendors more careful.

We note that several courts have bemoaned the fact that an injured third person had no cause of action, even though they have continued to defer to the legislature.[5] We do not choose to stand by and wring our hands at the unfairness which we ourselves have created. As expressed in the dissent in *Meade v. Freeman,* 93 Idaho 389, 462 P.2d 54, 64–65, (1969), which position has now become the law in Idaho:

" * * * Some courts cling steadfastly to the myth that it is the drinking and not the sale that is the proximate cause of the ensuing injury and are wearing blinders when it comes to observing the ordinary course of human events. * * * I perceive no difference in regarding the sale of further intoxicants to one already drunk [or to a minor] as a proximate cause of ensuing injuries and in those cases wherein the sale of firearms to minors or incompetents, the sale of explosives to minors or incompetents, the sale of dangerous drugs to those known to be addicted, or the manufacture and release upon the market of dangerously defective commodities are held to form a basis for liability. The underlying principle of all these cases is that the seller is sending out into the public a thing of danger which a reasonably prudent person under like circumstances would apprehend would be likely to cause injury to someone else.

"When most people walked and few had horses or carriages, or even in the days when the horse and buggy was a customary mode of travel, it may have been that

---

5. Other cases which have ruled that the changing of the common law is a legislative function are *Carr v. Turner,* 238 Ark. 889, 385 S.W.2d 656 (1965); *Nelson v. Steffens,* 170 Conn. 356, 365 A.2d 1174 (1976); *Wright v. Moffitt,* Del., 437 A.2d 554 (1981); *State v. Hatfield,* 197 Md. 249, 78 A.2d 754 (1951); *Holmes v. Circo,* 196 Neb. 496, 244 N.W.2d 65 (1976); *Hamm v. Carson City Nugget, Inc.,* 85 Nev. 99, 450 P.2d 358 (1969); *Garcia v. Hargrove,* 46 Wis.2d 724, 176 N.W.2d 566 (1970).

Four other jurisdictions which had ruled that this was a function for the legislature have overruled their cases. See *Alegria v. Payonk,* 101 Idaho 617, 619 P.2d 135 (1980), overruling *Meade v. Freeman,* 93 Idaho 389, 462 P.2d 54 (1969); *Lewis v. State,* Iowa, 256 N.W.2d 181, 195 A.L.R.3d 1221 (1977), overruling *Cowman v. Hansen,* 250 Iowa 358, 92 N.W.2d 682 (1958); *Lopez v. Maez,* 98 N.M. 625, 651 P.2d 1269 (1982), overruling *Marchiondo v. Roper,* 90 N.M. 367, 563 P.2d 1160 (1977); and *Walz v. City of Hudson,* S.D., 327 N.W.2d 120 (1982), implicitly overruling *Griffin v. Sebek,* 90 S.D. 692, 245 N.W.2d 481 (1976).

the common-law rule of non-liability arising from the sale of liquor to an intoxicated person was satisfactory. But the situation then and the problem in today's society of the imbiber going upon the public highways and operating a machine that requires quick response of mind and muscle and capable of producing mass death and destruction are vastly different. * * * "

As another court said: "When the ghosts of the past stand in the path of justice clanking their medieval chains, the proper course is for the judge to pass through them undeterred." [6]

This case is reversed and remanded for proceedings consistent with this opinion.

ROONEY, Chief Justice, dissenting, with whom RAPER, Justice, Retired, joins.

In this case, the majority opinion contends two separate grounds exist for finding liability on the part of appellees for injury to person or property which was occasioned by one to whom appellees furnished alcoholic liquor or malt beverages: (1) based on statutorily imposed liability under §§ 12–5–301(a)(v) and 12–6–101(a), W.S.1977,[1] and (2) based on common law pursuant to § 8–1–101, W.S.1977.[2]

I disagree.

## STATUTORILY IMPOSED LIABILITY

The majority opinion contends that the legislature intended the provisions of §§ 12–5–301(a)(v) and 12–6–101(a) to operate for the protection of the general public and not only for the protection of the minor or intoxicated person to whom the alcoholic liquor or malt beverage was sold. Thus, the majority opinion finds a duty to appellants. This contention is completely refuted by the exception placed in § 12–6–101(a) by the legislature. The general public is not protected at all if the minor can legally receive the alcoholic liquor or malt beverage from his guardian or from a member of his immediate family. The minor is protected from that which could result to him if someone gives him alcoholic liquor or malt beverages, but the ability is legislated for a guardian, etc., to forego the protection for his ward, etc. If the protection were intended to be for the general public, a child's guardian, etc., could not logically forego such protection on behalf of the general public. In other words, the duty to not furnish alcoholic liquor or malt beverage to a minor is legislatively imposed upon all but legal guardians, medical doctors and members of the minor's immediate family. Because certain classes of persons do not have a duty to refrain from furnishing such alcoholic liquor or malt beverages to minors, it cannot be said that the duty imposed on those not in such classes is one owed to the public. It would be discriminatory and irrational to impose a duty owed to the public by John Doe not to furnish alcoholic liquor

6. From *United Australia, Ltd. v. Barclays Bank, Ltd.,* [1941] A.C. 1, 19; citation taken from fn. 69 in 19 Hastings Law Journal 1259, 1267 (1968).

1. Section 12–5–301(a) provides in part pertinent to delivery of alcoholic liquor or malt beverages in a drive-up area by a holder of a retail liquor license:
   "(v) No order shall be received nor delivery made to a minor or intoxicated person in the area."
   Section 12–6–101(a) provides:
   "(a) Every person who sells, furnishes, gives or causes to be sold, furnished or given away any alcoholic liquor or malt beverage to any person under the age of nineteen (19), *who is not his legal ward, medical patient or member of his own immediate family,* is guilty of a misdemeanor." (Emphasis added.)

2. Section 8–1–101 provides:
   "The common law of England as modified by judicial decisions, so far as the same is of a general nature and not inapplicable, and all declaratory or remedial acts or statutes made in aid of, or to supply the defects of the common law prior to the fourth year of James the First (excepting the second section of the sixth chapter of forty-third Elizabeth, the eighth chapter of thirteenth Elizabeth and ninth chapter of thirty-seventh Henry Eighth) and which are of a general nature and not local to England, are the rule of decision in this state *when not inconsistent with the laws thereof,* and are considered as of full force until repealed by legislative authority." (Emphasis added.)

or malt beverages to a minor but to exempt Richard Roe from the same duty. If the duty is imposed for the benefit of the minor, the exempt classification is rational inasmuch as the guardian or member of the immediate family responsible for the minor—or the medical doctor in treatment beneficial to the minor—is in a position to waive the benefit on behalf of the minor.

None of the cases cited in the majority opinion as establishing a duty to the general public refer to a legislative exemption similar to that contained in § 12–6–101(a). The Annotation: "Common-law right of action for damage sustained by plaintiff in consequence of sale or gift of intoxicating liquor or habit-forming drug to another," 97 A.L. R.3d 528, collects cases in which liability has, and has not, been established both (1) based on violation of liquor laws, and (2) based on tort apart from violation of liquor laws. None of the cases there referred to concern attachment of liability for violations of liquor laws where the legislative intention was manifest, as here, to impose the duty for the benefit of the minor and not for the benefit of the general public.[3] The Wyoming legislature has addressed the issue of liability for sale of alcoholic liquor and malt beverages to minors, setting forth the scope of duty with reference thereto. In doing so, the liability of the seller was not extended to that here contended for by appellants.

This court interpreted the antecedents of §§ 12–5–301 and 12–6–101 in *Parsons v. Jow,* Wyo., 480 P.2d 396 (1971), and denied recovery in favor of third party against one who furnished alcoholic liquor and malt beverages to a minor who subsequently injured the third party. Subsequent to the date of that opinion, the statutes there involved were amended and re-enacted by the legislature more than once without material change in the provisions thereof which are here involved. Accordingly, the legislature is presumed to have been familiar with the construction placed thereon by the court in

*Parsons v. Jow,* supra, and to have adopted it as part of the law. Such is true unless a contrary intent clearly appears. *Harvey v. Stanolind Oil & Gas Co.,* 53 Wyo. 495, 84 P.2d 755 (1938), reh. denied 53 Wyo. 495, 86 P.2d 735 (1939); *Carpenter & Carpenter v. Kingham,* 56 Wyo. 314, 109 P.2d 463, reh. denied 56 Wyo. 314, 110 P.2d 824 (1941); and *In Re Contas,* 42 Wyo. 94, 291 P. 314 (1930).

There is no statutory liability imposed upon appellees in favor of appellants.

The majority opinion refers to *Distad v. Cubin,* Wyo., 633 P.2d 167 (1981) as authority for the court to establish the requirements of a legislative enactment as the standard of conduct of a reasonable man. The majority opinion neglects to note that, in Distad, we adopted the language of the Restatement, Torts 2d, to this end. Following is part of that quoted from the Restatement (§ 286) in *Distad* at page 175:

> " 'The court *may* adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively or in part
> " '(a) *to protect a class of persons which includes the one whose interest is invaded,* and
> " '(b) to protect the particular interest which is invaded, and
> " '(c) to protect that interest against the kind of harm which has resulted, and
> " '(d) to protect that interest against the particular hazard from which the harm results.' " (Emphasis added.)

As demonstrated, supra, these conditions cannot exist for the purposes of this case in light of the exception contained in § 12–6–101(a). The statutes cannot be said to set a standard for evidence of negligence (including the element of duty).

## COMMON LAW IMPOSED LIABILITY

The foregoing, in effect, makes improper any application of common law liability.

---

**3.** Of course, many of the cases in such collection do not impose statutory liability or change the common-law rule that the seller of intoxi-

cating liquor was not liable for injuries to those persons. The holdings being similar to that in *Parsons v. Jow,* Wyo., 480 P.2d 396 (1971).

Inasmuch as the legislature has set the perimeters for liability—perimeters which do not include liability to appellants—any application of common law would be precluded by the proviso in § 8–1–101 to the effect that common law is not effective "when inconsistent with the laws" of this state. When the legislature has dealt with the questions, as it has in §§ 12–5–301(a)(v) and 12–6–101(a), common law cannot be resorted to pursuant to § 8–1–101.

Although such should be dispositive of the question of common law imposed liability, I note that § 8–1–101 adopts the common law of England "as modified by judicial decisions." Our decision in *Parsons v. Jow,* supra, refused to modify the common law, but approved and judicially adopted it in Wyoming. It established the common law on this issue pursuant to § 8–1–101. To overrule that decision under the guise of amplifying common law pursuant to § 8–1–101 sets the stage whereby the bar, bench and populace cannot know what the law is and what it is not in a given circumstance until that circumstance reaches this court. The end result is a state which is not one of law but is one at the whim of this court. Certainly, at the time the transaction took place in this case, appellees believed they were operating under the law as set forth in the Parsons case (statutory directions aside). Suddenly, they find that the whim of the supreme court says otherwise.[4] This state and nation cannot successfully operate under such circumstances.

I authored the opinion in *Choman v. Epperley,* Wyo., 592 P.2d 714 (1979), which is heavily relied upon in the majority opinion for ability of the court to declare new common law at the whim of the court. The case does not support that position. After noting applicable law in common law as modified by judicial decisions, we pointed out that the proposition which we ultimately determined to be the law was probably the common law as of the fourth year of James I (1607), but that even if it were not, it was almost universally established law, and we cited and discussed several Wyoming cases which had established the proposition as the law in Wyoming. We did not, at our whim, overrule a case which held to the contrary, nor did we adopt the proposition at our whim. Rather, we recognized an already existing status of the law.

It is not the court's business to make laws. That is the function of the legislature. After reviewing the general status of the law relative to liability for furnishing alcoholic liquor or malt beverages to a minor—from the common law position through the approach taken by the various states to the issue, we said in *Parsons v. Jow,* 480 P.2d at 397–398:

> "The legislature of Wyoming has not seen fit to change the common law rule as it applies in this case. Whether legislation in the nature of a dramshop act or civil damage statute should be included as a part of our liquor control code *is within the province of the legislature.*" (Emphasis added.)

Since the date of that opinion, February 4, 1971, the legislature has not acted in the premises, reflecting satisfaction with the decision. The courts do not take kindly to intrusion by the legislature into court business, and such is improper. We should not intrude into the legislative business. To do so is also improper. Yet the majority opinion is doing just that in this case.

I would affirm.

---

4. The majority opinion notes the binding effect of *Parsons v. Jow,* supra, on the trial court, but refuses to accord the same consideration to appellees.