**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 12, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

In re: THOMAS CROW,

      Debtor,

----------------------------------------

RADIANCE CAPITAL
RECEIVABLES NINETEEN LLC,

      Appellant.

v.

THOMAS LESLIE CROW, also
known as Tom Crow; CAROL-ANN
CROW,

      Appellees.

No. 19-8082

---

**APPEAL FROM THE BANKRUPTCY APPELLATE PANEL**
**OF THE TENTH CIRCUIT**
**(NOS. WY-18-083 and WY-18-086**
**Judges Cornish, Hall, and Loyd)**

---

David von Gunten, von Gunten Law LLC, Denver, Colorado, for Appellant.

Stephen R. Winship, Winship & Winship, P.C., Casper, Wyoming, for Appellee
Thomas Leslie Crow.

Brent R. Cohen, Lewis Roca Rothgerber Christie LLP, Denver, Colorado, for
Appellee Carol-Ann Crow.

---

Before **TYMKOVICH**, Chief Judge, **BRISCOE**, and **BACHARACH**, Circuit
Judges.

**TYMKOVICH**, Chief Judge.

This case arises from a bankruptcy filing by Thomas Crow, who owned substantial property and investment accounts in Wyoming. His bankruptcy petition sought an exemption for approximately $2 million contained in a Fidelity account, which he claimed was jointly held with his wife (who did not file for bankruptcy) and therefore was shielded from creditors under Wyoming law. The Trustee and a creditor, Radiance Capital Receivables Nineteen, L.L.C., objected to the claimed exemption. After an evidentiary hearing, the bankruptcy court upheld the exemption, and a Bankruptcy Appellate Panel (BAP) affirmed.

On appeal, Radiance challenges the BAP's affirmance. Crow first argues we lack jurisdiction over this appeal because the BAP's affirmance of the bankruptcy court's ruling on the claimed exemption was not "final" within the meaning of 28 U.S.C. § 158(d)(1). We reject this argument and hold we have jurisdiction to review the BAP's holding concerning the exemption.

On the merits, we affirm. Applying Wyoming law, we conclude the Crows jointly held the Fidelity account with a right of survivorship—known as a "tenancy by the entirety" at common law—and was therefore exempt from the bankrupt estate. We further conclude the tenancy by the entirety was not severed by the Crows' subsequent conduct.

Radiance also challenges the BAP's affirmance of the bankruptcy court's ruling that an adversary proceeding is required to determine the amount of joint debt held by the Crows before any portion of the Fidelity account must be turned over to the Trustee. We hold Radiance lacks standing to challenge that portion of the BAP's ruling and therefore dismiss that aspect of its appeal.

## I. Background

### A. Facts

Thomas and Carol Crow resided in a home in Jackson, Wyoming. That property was sold in 2015 for approximately $10 million, resulting in $5.2 million in net proceeds. Of that amount, $1.5 million was applied to a new home in Jackson. The remaining approximately $3.7 million was placed in a Fidelity account.

The Fidelity account was opened in April 2015. The application to open the account was signed by the Crows, but their son-in-law, Jeff Marvin, handled the paperwork. Marvin testified he went to great lengths in his discussions with Fidelity representatives to ensure that any funds placed in the account would be held as a tenancy by the entirety. Consistent with that testimony, the application to open the account contains a handwritten note that labels the account a tenancy by the entirety. The note was apparently made by a Fidelity representative. Once the account was opened, subsequent monthly investment reports show the account

is titled in the name of "Thomas L Crow and Carol A Crow – Tenants by the Entirety."

In May 2015, the Crows executed a Fidelity Durable Power of Attorney granting their daughter Annabelle Marvin (Jeff Marvin's wife) broad powers to conduct transactions within the account.[1] All subsequent transactions and withdrawals from the account were conducted by the Marvins pursuant to the power of attorney. Transfers to the Marvins from the Fidelity account amounted to $532,000 in 2015 and $357,820 in 2016. The transfers were ostensibly to pay off an earlier loan made by the Marvins to the Crows through various intermediaries.

## B.     Bankruptcy Court Proceedings

Thomas Crow made his fortune as the founder of Cobra Golf. Unfortunately, he trusted his finances to an advisor who was later convicted of fraud. As a result, Crow's net worth was substantially depleted, leaving him with significant debt, including a judgment obtained by Radiance against Crow in the amount of $2.8 million. When Radiance sought to garnish the Fidelity account, Crow filed for bankruptcy protection under Chapter 7 of the Bankruptcy Code.

---

[1] Thomas Crow had begun showing signs of dementia by early 2015; he passed away in January 2020.

Crow claimed that the proceeds of the Fidelity account were exempt because it was held as a tenancy by the entirety with his wife Carol. The Trustee filed objections to that claimed exemption, as did Radiance.

The bankruptcy court held an evidentiary hearing on the claimed exemption, after which it entered an order holding that the Fidelity account was in fact held as a tenancy by the entirety and exempt under 11 U.S.C. § 522(b)(2)(B). It further held that "Mr. and Mrs. Crow's post-creation acts do not rise to the level to sever the ownership interest between [them]." Aplt. App. 130. The court also noted the amount of the exemption would be established upon determination of the amount of joint debt.

The Trustee then moved to have $1.8 million of the Fidelity account transferred to the Trustee based on the existence of joint debt owed by the Crows. Radiance joined in that motion. The bankruptcy court denied the motion without prejudice, holding that the determination of the amount of joint debt had to be decided in an adversary proceeding.

Radiance and the Trustee appealed the exemption order and the transfer order to the Bankruptcy Appellate Panel. After the appeal to the BAP had been perfected, the parties stipulated to allow a portion of Carol Crow's share in the Fidelity account to be transferred to her in order to pay for Thomas Crow's move into an assisted living facility. Pursuant to that stipulation, Carol Crow was entitled to use all but $1.8 million in the Fidelity account to pay those expenses.

The BAP affirmed both the exemption order and the transfer order, concluding the bankruptcy court did not err in determining the account was held by the Crows as tenants by the entirety. The panel also held that the tenancy by the entirety status of the account was not severed by subsequent transactions.

Radiance timely filed a notice of appeal. The Crows then filed a motion to dismiss the appeal, which was transferred to this panel for decision.

## II. Analysis

We first address the Crows' motion to dismiss for lack of appellate jurisdiction, and conclude we have jurisdiction. We then turn to the merits of Radiance's arguments.

### A.     Appellate Jurisdiction

Section 158(d) of Title 28 of the United States Code governs appeals from bankruptcy decisions issued by the bankruptcy court, district court, or the bankruptcy appellate panel. The court of appeals "shall have jurisdiction of appeals from all final decisions, judgments, orders, and decrees entered" by the district court or the BAP. 28 U.S.C. § 158(d)(1). A party may pursue an interlocutory appeal of an order under § 158(d)(2) if the district court or BAP certifies the order as one involving a matter of public importance or on which there is no controlling decision of the court of appeals.

The BAP did not certify Radiance's appeal under § 158(d)(2), so we have jurisdiction only if the decision of the BAP was "final" within the meaning of

§ 158(d)(1). The Crows argue the ruling on the issue before us is not a final appealable order. We disagree.

Issues of finality and appealability are different in bankruptcy cases. *Bullard v. Blue Hills Bank*, 135 S. Ct. 1686, 1692 (2015). "A bankruptcy case involves 'an aggregation of individual controversies,' many of which would exist as stand-alone lawsuits but for the bankrupt status of the debtor." *Id.* (quoting 1 Collier on Bankruptcy ¶ 5.08[1][b], at 5–42 (16th ed. 2014)). Thus, "Congress has long provided that orders in bankruptcy cases may be immediately appealed if they finally dispose of discrete disputes within the larger case." *Howard Delivery Serv. v. Zurich Am. Ins. Co.*, 547 U.S. 651, 657 n.3 (2006). Some courts have described this approach as "the flexible finality rule," which developed "because, if 'traditional' rules of finality applied in bankruptcy, no appeals would be heard in any bankruptcy matter until a final order issued as to the entire bankruptcy case." *Eddleman v. U.S. Dep't of Labor*, 923 F.2d 782, 786 n.7 (10th Cir. 1991).

In the Tenth Circuit, "[g]rant or denial of a claimed exemption is a final appealable order from a bankruptcy proceeding." *In re Brayshaw*, 912 F.2d 1255, 1256 (10th Cir. 1990). In this case, the bankruptcy court allowed Thomas Crow a tenancy-by-the-entirety exemption as to the Fidelity account, and the BAP affirmed subject to a determination of the amount of joint debt. This legal determination constituted a "[g]rant . . . of a claimed exemption" under *Brayshaw*,

and therefore may be immediately appealed.[2]  The Crows fail to acknowledge

*Brayshaw*, and nothing in their argument suggests it is no longer good law.

The Crows' motion to dismiss is denied, and we will proceed to the merits

of Radiance's appeal.

### B.  *Exemptions for Tenancy by the Entirety*

Radiance argues the bankruptcy court erred in determining the Fidelity

account is exempt.  It contends tenancy by the entirety is disfavored under

Wyoming law, and that the Fidelity account is not the sort of personal property

that can be held as a tenancy.  Even if the Fidelity account was created as a

tenancy by the entirety under Wyoming law, Radiance further argues that the

Crows' subsequent conduct severed that tenancy.  We reject Radiance's

arguments.

Section 522 of the Bankruptcy Reform Act of 1978 authorizes a debtor in

bankruptcy to exempt certain property from the bankrupt estate.  In particular,

§ 522(b)(2)(B) permits the exemption of "any interest in property in which the

debtor had, immediately before the commencement of the case, an interest as a

---

[2]  The concurrence argues the BAP did not "grant" an exemption and its legal determination was non-final because the total amount of the exemption was subject to a later factual determination of the amount of joint debt.  We think that view parses the meaning of "grant" as used in *Brayshaw* too finely.  In its own words, the bankruptcy court "allow[ed] [Thomas Crow's] tenants by the entirety exemption as to the Fidelity account," Aplt. App. 130, and the BAP affirmed this ruling.  This was sufficient to bring the BAP's determination within the holding of *Brayshaw*.

tenant by the entirety or joint tenant to the extent that such interest . . . is exempt from process under applicable nonbankruptcy law."  This provision "simply recognizes the right which exists under the laws of certain states, to protect entirety property from execution by the creditors of one spouse."  *In re Anselmi*, 52 B.R. 479, 484 (Bankr. Wyo. 1985).

Because there is no federal law of property, whether an exemption exists under § 522(b)(2)(B) is dependent on state law.

### 1. *Creation of a Tenancy by the Entirety*

A tenancy by the entirety is a common-law estate unique to married couples, with a right of survivorship where the surviving spouse retains the entire interest rather than acquiring the decedent's interest.  *Tenancy by the Entirety*, Black's Law Dictionary (11th ed. 2019).  Wyoming law recognizes tenancy by the entirety in personal property.  *Id.* at 485 ("It appears that Wyoming is among the minority of states which recognize tenancy by the entirety in personal property."); *Wambeke v. Hopkin*, 372 P.2d 470, 475–76 (Wyo. 1962); Wyo. Stat. § 34-1-140 (tenancy by the entirety "as to any interest in real or personal property" may be established "by designating in the instrument . . . the names of such . . . tenants by the entirety").  Radiance points out that while tenancy by the entirety was once presumed at common law, it is now disfavored in Wyoming.  *Anselmi*, 52 B.R. at 487.  This only means, however, that "the existence of a tenancy by the entirety

will not be presumed . . . in the absence of an express intent to create a right of survivorship." *Id.*

In *Wambeke* the Wyoming Supreme Court laid out two alternative ways to prove the creation of a tenancy by the entirety in personal property:

> 1. Each of the four unities of interest, time, title, and possession must be present, with the added unity of person for a tenancy by the entirety; or

> 2. In the absence of one or more of the first four unities, it must be evident from the language of the instrument itself that the parties thereto intended to create a right of survivorship.

372 P.2d at 476. The parties agree that the required unities of interest are lacking with respect to the Fidelity account, so the only way the Crows can establish a tenancy by the entirety is by the second alternative described in *Wambeke*.

Whether a particular document constitutes an "instrument" within the meaning of *Wambeke* is a matter on which the parties strongly disagree. Radiance argues for a narrow definition, and its position is effectively that an investment account like the one at issue here can never be held as a tenancy by the entirety. Radiance contends an "instrument" within the meaning of *Wambeke* was narrowly defined by the bankruptcy court in *Anselmi*: "As used by the *Wambeke* court, 'instrument' might include bills, bonds, conveyance, leases, mortgages, contract, promissory notes, deeds, and other similar writing whereby 'chattel is embodied

-10-

in a document.'"  *Anselmi*, 52 B.R. at 492 (quoting Restatement (2d) of Conflicts, §§ 248 & 249 cmt. h).  Radiance also notes that Wyo. Stat. § 34-1-140 provides that a joint tenancy or tenancy by the entirety "may be established" in an "instrument of conveyance or transfer."  Radiance argues there is nothing in this case that fits this definition of "instrument."

We disagree with Radiance's position, which would unduly narrow tenancies by the entirety in Wyoming.  The relevant passage of *Anselmi* reads:

> [A] careful reading of *Wambeke* indicates that, in this context, ["instrument"] *refers to those writings which give formal expression to a legal act or agreement for the purpose of creating, securing, modifying, or terminating a right*.  As used by the *Wambeke* court, "instrument" might include bills, bonds, conveyance, leases, mortgages, contract, promissory notes, deeds, and other similar writing whereby "chattel is embodied in a document."

52 B.R. at 492 (emphasis added).  The first sentence provides an apt definition, and is consistent with Wyoming cases that inquire whether the "creating instrument" evidences a clear intention to create a tenancy by the entirety.  *See, e.g., Choman v. Epperly*, 592 P.2d 714, 718 (Wyo. 1979) (citing cases).  On the other hand, the second sentence on which Radiance relies is only an example—it indicates the definition of instrument "might include" a document in which the chattel is embodied, not that it is limited to such a document.  Similarly, § 34-1-140 states that a joint tenancy or tenancy by the entirety "may be established" in an instrument of conveyance or transfer—not that it can *only* be established in such a manner.

-11-

The Wyoming Supreme Court recently confirmed that § 34-1-140 does not prescribe the only method of creating a right to survivorship. In *Fleig v. Estate of Fleig*, 413 P.3d 63 (Wyo. 2018), the court held that a husband and wife held a bank account as a joint tenancy with right of survivorship because the membership account contract between the couple and the bank unambiguously evidenced an intent to create a right of survivorship. *Id.* at 643.[3] Radiance complains *Fleig* does not involve a tenancy by the entirety. But tenancy by the entirety is merely one species of a right of survivorship, and Wyoming cases treat joint survivorship and tenancy by the entirety interchangeably for analytical purposes. Indeed, the *Wambeke* standard itself, which indisputably addressed whether a tenancy by the entirety had been created, used the phrase "right of survivorship." 372 P.2d at 476.

Here, the application to open the Fidelity account is a "creating instrument," and it gave formal expression to an agreement between Fidelity and the Crows to create rights. The application contains a handwritten note expressly labeling the account as a tenancy by the entirety. We therefore find it is "evident from the language of the instrument itself that the parties thereto intended to create a right of survivorship." *Wambeke*, 372 P.2d at 476.

---

[3] In addition, other Wyoming cases have accepted bank account signature cards as evidence of intent to create a right of survivorship. *See, e.g., Nat'l Bank of Newcastle v. Wartell*, 580 P.2d 1142, 1145–46 (Wyo. 1978).

-12-

Radiance further argues, however, that the application itself contains language allowing either spouse to dispose of the assets of the account without the consent or approval of the other. Citing *Anselmi*, Radiance argues this provision is inconsistent with the very concept of a tenancy by the entirety. We disagree. *Anselmi* concludes only that the unity of interest is missing where either spouse is capable of voluntarily alienating the property without consent of the other. 52 B.R. at 491. But the second alternative under *Wambeke* "recognizes the existence of a joint tenancy *without the four unities* if the intention to create such is evident." *Choman*, 592 P.2d at 715 (emphasis added). In this case, all the parties agree that the four unities are lacking and that a tenancy of the entirety can be proved only by a demonstration of intent based on the language of the instrument itself. We find the Crows proved that requisite intent under the second alternative.

### 2. *Severance of a Tenancy by the Entirety*

Even if a tenancy by the entirety had been created, Radiance argues it was "severed" by certain actions taken after the Fidelity account was opened. First, it argues that withdrawals from the account by Annabelle Marvin and Jeff Marvin severed the tenancy. Second, Radiance argues that when the Crows entered a stipulation to allow Carol Crow access to a part of the Fidelity account to pay for her husband's nursing care expenses, the tenancy was severed. We hold the tenancy by the entirety was not severed.

-13-

Radiance characterizes the Marvins as treating the Fidelity account as a sort of slush fund, withdrawing proceeds on a whim for their own personal benefit. Even accepting this characterization as true, Radiance cites only a single bankruptcy case from Florida in support of their argument that the Marvins' withdrawals severed the tenancy. In that case, the court stated that if any of the five unities are destroyed, "there is no entireties estate." *In re Pierre*, 468 B.R. 419, 426 (Bankr. M.D. Fla. 2012). As discussed above, however, the parties all agree that the required unities are lacking, so it is not clear why *Pierre* is relevant. In addition, in making the withdrawals, Annabelle Marvin was exercising her power of attorney on behalf of *both* her parents. The Crows, as the owners of the Fidelity Account, had the right to determine its subsequent disposition, and they did so by granting Annabelle Marvin power of attorney and ratifying each subsequent transfer.

Radiance also argues the stipulation in the bankruptcy court to allow Carol Crow to access a portion of the Fidelity funds severed the tenancy. As the BAP noted in this case, however, a debtor's right to an exemption is determined on the petition date. *White v. Stump*, 266 U.S. 310, 313 (1924). And the language of § 522(b)(3)(B) refers to "interests of the debtor in property as of the commencement of the case." Any subsequent agreement concerning the Fidelity account therefore has no bearing on the status of the exemption.

-14-

## C. *The Transfer Order*

After the bankruptcy court found the Fidelity account to be exempt as a tenancy by the entirety, the Trustee moved to have a portion of the Fidelity account transferred to the Trustee based on the existence of joint debt owed by the Crows. The bankruptcy court denied the motion without prejudice. In that order, the bankruptcy court held the determination of the amount of joint debt had to be decided in an adversary proceeding. Radiance argues the bankruptcy court erred in so holding.

The Crows contend Radiance has no standing to challenge the transfer order, and we agree. The Crows argue Radiance is not a "person aggrieved" by the order, and therefore has no standing to challenge it. To qualify as a "person aggrieved," Radiance must show that its rights or interests are "directly and adversely affected pecuniarily by the decree or order of the bankruptcy court." *In the Matter of C.W. Mining Co.*, 636 F.3d 1257, 1260 (10th Cir. 2011) (quoting *Holmes v. Silver Wings Aviation*, 881 F.2d 939, 940 (10th Cir. 1989)). Radiance makes no effort to explain how it has been aggrieved by the bankruptcy court's transfer order, nor could it. Indeed, Radiance's own brief argues that "*the Trustee is entitled to turnover of at least half the Fidelity funds.*" Radiance Op. Br. at 38 (emphasis added). In addition, because the transfer order is entirely procedural it makes no substantive determination concerning any party's rights or interests, including Radiance's. Accordingly, Radiance lacks standing to challenge the

order, and we dismiss this aspect of its appeal.

## III.  Conclusion

For the foregoing reasons, we affirm the BAP's holding that the Fidelity account is exempt under § 522(b)(2)(B).  We further dismiss the portion of Radiance's appeal concerning the bankruptcy court's transfer order.

No. 19-8082, *Radiance Capital Receivables Nineteen LLC v. Crow*
**BRISCOE**, Circuit Judge, concurring.

I agree that we should affirm the Bankruptcy Appellate Panel's (BAP's) holding on the merits. I also agree that we should deny the Crows' motion to dismiss for lack of jurisdiction. I disagree, however, with the rationale proposed in support of our having appellate jurisdiction to review the BAP's rulings. Specifically, I disagree that the BAP's decision "granting" an exemption was immediately appealable. As I read the BAP's ruling, it did not "grant" an exemption; rather, it left the exemption contingent on the outcome of an adversary proceeding.[1] Thus, Radiance's appeal of the BAP's decision was interlocutory. Now that the adversary proceeding has concluded as to the exemption issue, however, Radiance's appeal has ripened, and we may exercise jurisdiction.

Under 28 U.S.C. § 158(d)(1), we have jurisdiction from "all final decisions, judgments, orders, and decrees entered" by the BAP or district court exercising appellate jurisdiction over a bankruptcy court. Accordingly, to determine our jurisdiction, "we look to the order of the BAP itself, determining whether it is final by considering the effect that the order will have in the context of the particular appeal." *In re Tri-Valley Distributing, Inc.*, 533 F.3d 1209, 1214 (10th Cir. 2008). "If the BAP's order results in significant further proceedings in the bankruptcy court, the BAP's order is not final, and

---

[1] The BAP noted that although Mrs. Crow had intervened in the appeal to the BAP, she was not a party or participant in the proceedings before the bankruptcy court and thus unable to fully protect her rights. The BAP concluded an adversary proceeding would permit the bankruptcy court to obtain jurisdiction over Mrs. Crow and allow her due process before potentially requiring turnover of the property in which she has an interest. BAP Op. at 40.

we do not have jurisdiction to consider an appeal therefrom." *Id.* An order is only "final" when it "alters the status quo and fixes the rights and obligations of the parties." *Bullard v. Blue Hills Bank*, 135 S. Ct. 1686, 1692 (2015).

Here, the BAP correctly found that the bankruptcy court's exemption order was an interlocutory order. Aplt. App. at 1290. The bankruptcy court ruled that the Fidelity account was held by the Crows as tenants by the entirety. *Id.* at 130. The bankruptcy court did not, however, determine the extent of the exemption. Rather, the bankruptcy court ruled that Mrs. Crow was entitled to at least one half of the Fidelity account, representing her interest in the tenancy by the entirety as a non-debtor spouse, and that "[t]he portion of the other half that is subject to administration as non-exempt will be based on the amount of joint debt as determined in the pending Turnover proceeding." *Id.* In a separate order, the bankruptcy court ruled that the "Turnover proceeding" to determine the amount of joint debt should be brought as an adversary proceeding. *Id.* at 132 (turnover order). Thus, as the BAP recognized, "[u]ntil the amount of the tenants by the entirety exemption [was] determined, there [was] no final resolution for [the BAP] to review." *Id.* at 1290. And the amount of the tenants by the entirety exemption could not be determined until the conclusion of the adversary proceeding.[2]

---

[2] The majority does not clearly explain how the BAP erred in concluding that the exemption order was nonfinal.

The BAP's decision did not change the interlocutory nature of the bankruptcy court's exemption order. Like the bankruptcy court, the BAP held that the exemption was "dependent upon the joint debt of the Crows," and the amount of joint debt would be resolved in an adversary proceeding. BAP Op. at 41. Thus, this case initially fell under our general rule that the BAP's decision is interlocutory when it affirms an interlocutory order by the bankruptcy court. *See Tri-Valley Distributing*, 533 F.3d at 1214–15.

*In re Brayshaw*, 912 F.2d 1255, 1256 (10th Cir. 1990), does not resolve the issue before us. In that case, we held that "[g]rant or denial of a claimed exemption is a final appealable order from a bankruptcy proceeding." *Id.* Yet, as described above, the BAP's ruling was not that clear cut. The BAP did not "grant" or "deny" any exemption—it merely made a legal determination that the exemption could apply to anywhere between half and all of the Fidelity account. Thus, the BAP's ruling left the parties' rights and obligations far from "fixed." *Bullard*, 135 S. Ct. at 1692. The BAP's ruling regarding the exemption only got the parties part way toward resolution of their competing claims for the Fidelity account—it affirmed the bankruptcy court's conclusion that the Fidelity account was established and maintained by the Crows as tenants in the entirety, but whether any part of the account would escape exemption remained to be seen.

Although the BAP's decision was not final, the bankruptcy court's subsequent grant of summary judgment in the adversary proceeding cured Radiance's otherwise

3

premature notice of appeal.[3]  An otherwise ineffective interlocutory appeal may be cured if "subsequent to the filing of the premature notice of appeal, the [bankruptcy court] either finally disposes of the remainder of the case or follows the Rule 54(b) procedure for entry of final judgment on the particular matters theretofore appealed."  *In re Durability*, 893 F.2d 264, 266 (10th Cir. 1990) (citing *Lewis v. B.F. Goodrich Co.*, 850 F.2d 641, 645 (10th Cir. 1988)).  In its summary judgment order, the bankruptcy court determined that "[n]o interest in the Fidelity Account remains in the bankruptcy estate."  Aple. Not. Suppl. Authority, Att. 1 (Order Granting Summ. J.) at 6.  Thus, the remainder of the case left by the BAP's decision—i.e., the determination of joint debt and the amount of the exemption—has been finally disposed, and jurisdiction is now proper.  *See also In re Woolsey*, 696 F.3d 1266, 1268–69 (10th Cir. 2012) (finding jurisdiction to review a district court's affirmance of a bankruptcy court's nonfinal order, where the bankruptcy court confirmed a plan while the appeal was pending).[4]

---

[3] The bankruptcy court granted summary judgment in favor of Mrs. Crow, concluding: "Upon Mr. Crow's passing, not only did his interest in the entirety terminate, but also the Trustee and the bankruptcy estate's interest in the entirety property, in favor of Mrs. Crow.  No interest in the Fidelity account remains in the bankruptcy estate."  Aple. Not. Suppl. Authority, Att. 1 (Order Granting Summ. J.) at 6.

[4] In *Woolsey*, we concluded we had jurisdiction, in part, because the parties did not "identif[y] any prejudice anyone would suffer by taking up the appeal now."  696 F.3d at 1269; *see also id.* ("[A]t least absent any indication of potential prejudice, a premature notice of appeal involving a bankruptcy matter, even one (like this one) with an interstitial stop in the district court, ripens and become effective once a final order approving a plan of reorganization is entered.") (internal quotations omitted).  The Crows are not prejudiced by our exercise of jurisdiction, as our resolution here may help guide

Crow points out that the bankruptcy court denied summary judgment on Carol Crow's counterclaim and has not entered final judgment in the adversary proceeding. *See* Errata to Oral Argument. Further, the bankruptcy court has not entered a Rule 54(b) order in the adversary proceeding. Yet, Carol Crow's counterclaim was not part of the BAP's decision; thus, her counterclaim is not relevant to whether we have jurisdiction over Radiance's appeal of the BAP's decision. Further, a Rule 54(b) certification is only one way to cure an appeal of an interlocutory order. Because the bankruptcy court's summary judgment order "finally dispose[d] of the remainder" of the BAP's consideration of the exemption issue, jurisdiction over the exemption issue is proper under the first alternative recognized in *Durability*.

The finality rules are indeed "different in bankruptcy." *Bullard*, 135 S. Ct. at 1692. Yet, they are not so flexible as to permit review while the parties' dispute is simultaneously litigated in an adversary proceeding. Radiance's appeal of the exemption issue only ripened when the adversary proceeding concluded as to that issue.

---

the parties and the bankruptcy court in future proceedings. *See* Aple. Not. Suppl. Authority, Att. 1 (Order Granting Summ. J.) at 9 (staying enforcement of grant of summary judgment pending determination of this appeal). The Trustee, although ostensibly aware of this appeal, has not asserted that the appeal should be dismissed.

5